## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SOOS & ASSOCIATES, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 1:17-cv-06577 |
| v. | ) | |
| | ) | |
| FIVE GUYS ENTERPRISES, LLC and | ) | |
| FIVE GUYS OPERATIONS, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

## SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES

Defendants Five Guys Enterprises, LLC and Five Guys Operations, LLC (collectively, "Five Guys") responds to the Complaint of Plaintiff Soos & Associates, Inc. ("Plaintiff" or "Soos") as follows:

## PRELIMINARY STATEMENT

Plaintiff's claims under the Copyright Act and Digital Millennium Copyright Act fail. Soos's description of the allegedly copyrightable material in its plans is overly broad and includes ideas, concepts, or principles. Allegations of infringement arising from those elements are barred by the doctrines of merger, scenes a faire, and/or the idea/expression dichotomy. Likewise, elements of the plans that Soos asserts as having been infringed are not copyrightable expression because they are not original. Finally, Plaintiff is not entitled to injunctive relief under any theory for a number of reasons, including that its alleged injury is not immediate or irreparable; Soos has an adequate remedy at law; the balance of hardships would not favor Soos; and/or public policy weighs against injunctive relief.

00040907

## ANSWER

1.  This is an action pursuant to 17 U.S.C. §101 for copyright infringement and violations of the Digital Millennium Copyright Act arising out of Defendants' unauthorized copying, distribution and creation of derivative works of Plaintiff's architectural works.

    **ANSWER:** Five Guys admits that the Complaint alleges copyright infringement and violation of the Digital Millennium Copyright Act arising out of alleged unauthorized copying, distribution, and creation of derivative works of Soos's architectural plans, but denies that Five Guys engaged in conduct constituting copyright infringement or violation of the DMCA.

## THE PARTIES

2.  Soos & Associates, Inc. ("Soos") is an Illinois corporation, created and organized under the laws of the state of Illinois with its principal place of business in Lincolnshire, Illinois.

    **ANSWER:** Five Guys admits the allegations of Paragraph 2.

3.  On information and belief, Defendant Five Guys Enterprises, LLC ("Five Guys Enterprises"), is a Delaware limited liability company with its principal place of business in Lorton, Virginia.

    **ANSWER:** Five Guys admits the allegations of Paragraph 3.

4.  On information and belief, Five Guys Operations, LLC ("Five Guys Operations") is a Delaware limited liability company with its principle place of business in Wilmington, Delaware.

    **ANSWER:** Five Guys admits that Five Guys Operations is a Delaware limited liability company, but denies that its principal place of business is in Wilmington, Delaware. Five Guys states that Five Guys Operations's principal place of business is in Lorton, Virginia.

5.  On information and believe, at all relevant times, Gregg S. Elstro ("Elstro") was, and identified himself as, Director of Construction for Five Guys Enterprises and Five Guys Operations. See email example, attached as Ex. A.

    **ANSWER:** Five Guys admits that "Director of Construction" is one of the titles Mr. Elstro has held during his employment with Five Guys.

6. Elstro not only had access to all of Plaintiff's works discussed below, but, on information and belief, Elstro, along with other agents and representatives of Five Guys, copied and distributed the Soos copyrighted material set forth below to third parties.

**ANSWER:** Five Guys admits that Elstro and Five Guys had access to architectural works created by Plaintiff, including the three plans attached to the Complaint, and that Five Guys utilized these plans in connection with the specific restaurant projects for which they were created and licensed to Five Guys. The remaining allegations of Paragraph 6 are denied.

## JURISDICTION AND VENUE

7. This Court has subject jurisdiction over this action pursuant to in 17 U.S.C. §101, *et seq*.

**ANSWER:** Five Guys admits the allegations of Paragraph 7.

8. Venue is proper in this Court pursuant to in 28 U.S.C. §1400(a) because Defendants can be found in this district.

**ANSWER:** Five Guys admits the allegations of Paragraph 8.

9. Defendants have had regular and consistent contacts with the State of Illinois sufficient to confirm personal jurisdiction, including engaging Soos & Associates over 100 times to perform architectural services in Illinois and other states.

**ANSWER:** Five Guys admits that it had regular and consistent contacts with Illinois sufficient to confer personal jurisdiction and admits that it regularly engaged Soos to perform architectural services in Illinois and other states, but denies that it has engaged Soos over 100 times to perform architectural services because Five Guys's review of its records does not reflect over 100 engagements; but rather, approximately 95 engagements.

## FACTS

10. Soos & Associates, Inc. ("Soos") is 24-year old architectural firm that performed over one hundred projects for Five Guys from 2008 to 2015.

**ANSWER:** Five Guys admits that Soos is an architectural services firm of approximately 24 years and admits that Five Guys engaged Soos for numerous projects during

the time period from 2008 to 2015, but denies that it engaged Soos for over 100 projects during

that period because Five Guys's review of its records does not reflect over 100 engagements; but

rather, approximately 95 engagements.

11. Among other things, Soos has developed a reputation for retail rollout, *i.e.*, where it provides architectural services in support of a high volume retail buildout program.

    **ANSWER:** Five Guys admits that Soos provided Five Guys with architectural services

for the construction of FIVE GUYS retail locations, but lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations of paragraph 11.

12. In 2008, Soos was approached by Five Guys and contracted with Five Guys to develop the interior and exterior architectural plans for a number of Five Guys projects in Illinois and around the country.

    **ANSWER:** Five Guys admits that beginning in or around late 2008, Plaintiff entered

into contracts with Five Guys to perform architectural services for Five Guys projects in Illinois

and other states.

13. When Soos initially was engaged, Five Guys provided Soos with a former architect's plans.

    **ANSWER:** Five Guys admits the allegations of Paragraph 13.

14. Soos did not copy copyrightable expression from the plans; rather, as is its practice, Soos began developing its own system of drawings, abbreviations, construction notes and other materials to use in its initial and subsequent plans.

    **ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 14.

15. Architectural plans can involve far more than simply creating the floor plan of a given space.

    **ANSWER:** Five Guys admits the allegations of Paragraph 15.

16. Plans like those developed by Soos are filled with materials that plumbers, electricians and other construction workers can rely on in building and developing projects.

    **ANSWER:** Five Guys admits the allegations of Paragraph 16.

17. Architects develop plans both textually and graphically.

    **ANSWER:** Five Guys admits the allegations of Paragraph 17.

18. In developing its series of plans for various Five Guys locations, Soos created its own original expression, including specific text and illustrations.

    **ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 18.

19. Soos goes to great lengths to protect its intellectual property rights in work product provided to clients.

    **ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 19.

20. Even though as a matter of law Soos owned all of the copyrights in the plans it created for Five Guys, from the time these plans were reduced to a tangible form of expression, Soos reemphasized this point again and again to Five Guys.

    **ANSWER:** Five Guys denies the allegations of Paragraph 20.

21. For example, each written contract Soos provided to Five Guys spelled out Soos' copyright ownership:

> The Architect and the Architects consultants shall be deemed the original authors and owners respectively of any materials produced under this agreement and shall retain all common law, statutory and other reserved rights, including copyrights…

*See, e.g.*, Ex. B, ¶ 7.0

    **ANSWER:** Five Guys admits that the contract attached to Plaintiff's Complaint as

Exhibit B contains language similar or identical to the language of paragraph 21 and that

additional Soos contracts for architectural services associated with specific restaurant locations

also contain language similar or identical to this language. But Five Guys denies that each

written contract Soos provided to Five Guys "spelled out Soos' copyright ownership" or

included language similar or identical to the quoted language because the agreement regarding the Corporate Design Standards work provided to Five Guys by Soos did not do so.

22. In addition, each Soos plan bears the following copyright management information language:

> These drawings and specifications are the confidential and proprietary property of Soos & Associates, Inc. and shall not be copied or reproduced without written authorization…. Use of these drawings for reference or example on another project requires the services of Soos & Associates, Inc. Reproduction of the contract documents for reuse on another project is not authorized.

Exs, C, D, E.

**ANSWER:** Five Guys admits that the architectural plans attached as Exhibits C, D, and E to Plaintiff's Complaint contain the above-quoted language and that additional Soos architectural plans associated with specific restaurant locations also contain this language. But Five Guys denies that each architectural plan Soos provided to Five Guys contains this language because not all of Soos's Corporate Design Standards work provided to Five Guys contained this language.

23. Exhibits C, D and E contain three original plans prepared by Soos in connection with its work for Five Guys along with copies of their respective copyright registration certificates.

**ANSWER:** Five Guys admits the allegations of Paragraph 23.

24. Soos regularly reminded Five Guys employees that Soos owned the copyright in its materials and on more than one occasion warned Five Guys that its materials should not be shared with third parties without Soos' authorization.

**ANSWER:** Five Guys denies the allegations of Paragraph 24.

25. Though Soos did not publish its architectural plans, or transfer the copyrights on these materials to Five Guys, Soos did provide Five Guys with a copy of every plan Soos prepared for Five Guys.

**ANSWER:** Five Guys admits the allegations of Paragraph 25 with respect to Soos's architectural services and plans associated with specific restaurant locations, but denies the

allegations with respect to Soos's work in connection with Five Guys's Corporate Design

Standards project.

26. It was Soos' understanding that Five Guys employees would need access to Soos plan documents to assist with needed repairs and other site-specific issues.

   **ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 26.

27. Five Guys requested that Soos digitally upload plan documents to a document management portal called "Buzzsaw."

   **ANSWER:** Five Guys admits that it requested that Soos digitally upload certain

materials to the "Buzzsaw" portal in connection with the Corporate Design Standards project, but

otherwise denies the allegations of Paragraph 27.

28. In July 2013, Eric Styer, a Soos employee who had worked on the Five Guys projects, left Soos' employ.

   **ANSWER:** Five Guys admits the allegations of Paragraph 28.

29. After Styer left Soos, he formed a new company, DXU, and Five Guys transferred its architecture business to DXU.

   **ANSWER:** Five Guys admits the allegations of Paragraph 29.

30. Upon investigation, Soos discovered that Styer's new company created plans for new Five Guys stores using copyrighted material from site specific plans Soos had created for other Five Guy store locations, copies of which Soos had previously provided to Five Guys for only limited use.

   **ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 30.

31. Attached as Exhibit F, is a copy of a publicly-filed plan by DXU. The highlighted portions reflect some, but not all, of the copyrighted expression taken verbatim from Soos' prior drawings to which Five Guys had access.

    **ANSWER:** Five Guys admits that the Exhibit F to the Complaint appears to be an

accurate copy of a publicly-filed plan by DXU, but denies the remaining allegations of Paragraph

31.

32. In recent months, through filing Freedom of Information requests and other channels, Soos has uncovered a number of other architects' plans for new Five Guys' locations which incorporate Soos' copyrighted expression from previously completed site-specific plans Soos furnished to Five Guys.

    **ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 32.

33. Exhibit G reflects just one of several plans incorporating Soos' copyrighted work that Soos has recently uncovered. The highlighted portions of this exhibit reflect portions of Soos' copyrighted material taken and used without Soos' authorization.

    **ANSWER:** Five Guys admits that Exhibit G to the Complaint appears to be an accurate

copy of a publicly-filed architectural plan but denies the remaining allegations of Paragraph 33.

34. On information and belief, Five Guys copied and distributed, or otherwise provided access to Soos' copyright protected plans to these other architects who then used the Soos materials to create new plans for Five Guys, all without Soos' approval.

    **ANSWER:** Five Guys denies the allegations of Paragraph 34.

## COUNT I

### Copyright Infringement

35. The plans prepared for Five Guys were the original work of Soos and belonged to Soos. In addition to the individual drawings and text, the selection and arrangement of the materials in the drawings were original to Soos.

    **ANSWER:** Five Guys denies the allegations of Paragraph 35.

36. Five Guys had access to the plans attached as Exhibit C, D and E as well as all of Soos' other plans prepared for Five Guys.

    **ANSWER:** Five Guys admits the allegations of Paragraph 36.

37. Through access to Buzzsaw and other means, Five Guys provided third party architects copies of Soos' copyrighted material.

    **ANSWER:** Five Guys admits that certain materials prepared by Plaintiff were available

on Buzzsaw and thus available to parties with access to Buzzsaw, with the express knowledge

and permission of Soos, but denies the remaining allegations of Paragraph 37.

38. Pursuant to 17 U.S.C. §106, Soos has the exclusive rights to copy, distribute and make derivative works from its copyrighted work.

    **ANSWER:** Five Guys admits that 17 U.S.C. § 106 sets forth the exclusive rights

available to the owner of a valid copyright, but denies the remaining allegations of Paragraph 38.

39. In direct contravention to Soos exclusive rights under the Copyright Act, Five Guys copied and distributed the Soos plans to various third party architects and others or created derivative works based on Soos' copyrighted works and thereby infringed Soos' copyrights.

    **ANSWER:** Five Guys denies the allegations of Paragraph 39.

40. As a direct and proximate result of Five Guys infringement of Soos' copyrights, Soos has suffered and continues to suffer substantial damages.

    **ANSWER:** Five Guys denies the allegations of Paragraph 40.

41. Because Five Guys willfully engaged in the acts complained of with in conscious disregard of Soos' rights, Soos is entitled to the maximum statutory damages allowable

    **ANSWER:** Five Guys denies the allegations of Paragraph 41.

**COUNT II**

**Contributory Copyright Infringement**

42. Soos reincorporates the allegations from paragraphs 1 through 41 above.

**ANSWER:** Five Guys incorporates by reference its responses to Paragraphs 1 through

41 above, as if fully set forth herein.

43. On information and believe, Five Guys distributed or otherwise provided access to Soos' copyrighted work to third-party architects and encouraged them to incorporate portions of Soos' copyright work in the plans they prepared for Five Guys.

**ANSWER:** Five Guys denies the allegations of Paragraph 43.

44. Five Guys knew that by making and distributing copies of, or otherwise providing access to, Soos' copyrighted works to third-party architects that the Soos works would be copied and used to create derivative works.

**ANSWER:** Five Guys denies the allegations of Paragraph 44.

45. Five Guys benefitted from the plans prepared by third-party architects.

**ANSWER:** Five Guys admits the allegations of Paragraph 45.

46. On information and belief, Five Guys intended to have and encouraged third-party architects to copy, distribute and make derivative works from Soos' copyright work in violation of 17 U.S.C. §106.

**ANSWER:** Five Guys denies the allegations of Paragraph 46.

47. By causing third parties to engage in the behavior set forth above, Five Guys has contributorily infringed Soos copyrights.

**ANSWER:** Five Guys denies the allegations of Paragraph 47.

## COUNT III

### Vicarious Liability

48. Soos reincorporates the allegations from paragraphs 1 through 47 above.

**ANSWER:** Five Guys incorporates by reference its responses to Paragraphs 1 through

47 above, as if fully set forth herein.

49. Five Guys selected and hired all of the third-party architects to whom it provided copies or access to the Soos copyrighted works.

   **ANSWER:**  Five Guys admits that it hired some of the third-party architects to whom it

provided copies or access to Buzzsaw but denies the remaining allegations of Paragraph 49.

50. Five Guys retained control and the right to approve all works created by the third-party architects.

   **ANSWER:**  Five Guys denies the allegations of Paragraph 50.

51. Five Guys benefited from the use of Soos copyrighted materials it provided to third-party architects.

   **ANSWER:**  Five Guys denies the allegations of Paragraph 51.

52. Five Guys declined to exercise the control to stop or limit the use of Soos' copyrighted materials. As a direct result of Five Guys activities, Five Guys is vicariously liable for such infringements caused by the third-party architects.

   **ANSWER:**  Five Guys denies the allegations of Paragraph 52.

## COUNT IV

## Violation of the Digital Millennium Copyright Act

53. Soos reincorporates the allegations from paragraphs 1 through 52 above.

   **ANSWER:**  Five Guys incorporates by reference its responses to Paragraphs 1 through

52 above, as if fully set forth herein.

54. All Soos plans provided to Five Guys contained "copyright management information," including, among other things, the title and other information identifying the work as well as Soos' name and other information about Soos.

   **ANSWER:**  Five Guys admits the allegations of Paragraph 54 with respect to Soos's

architectural plans associated with specific restaurant locations, but denies the allegations with

respect to Soos's work in connection with Five Guys's Corporate Design Standards project.

55. On information and belief, Five Guys either removed this copyright management information from the Soos plans when it distributed them to third parties, knowingly deleted such information from copies of the Soos plans to which it allowed third-parties to have access or distributed the plans knowing the information had been deleted.

**ANSWER:** Five Guys denies the allegations of Paragraph 55.

56. The removal of the copyright management information and any subsequent distribution or use of the Soos copyrighted plans was done without Soos' authorization and in violation of 17 U.S.C. §1202(b).

**ANSWER:** Five Guys denies the allegations of Paragraph 56.

57. Pursuant to Section 17 U.S.C. §1203, Soos is entitled to the actual damages and additional profits obtained by Five Guys or statutory damages for each violation "not less than $2,500 or more than $25,000 dollars.

**ANSWER:** Five Guys denies the allegations of Paragraph 57.

**PRAYERS FOR RELIEF**

In response to each and every prayer for relief alleged in the Complaint, Five Guys denies that Plaintiff is entitled to any of the requested relief and denies any further allegations that may be contained in Plaintiff's prayers for relief. Five Guys further denies each and every allegation, matter, or thing, express or implied, contained in the Complaint that is not expressly admitted in this Amended Answer.

**AFFIRMATIVE DEFENSES**

1. Five Guys restates and reincorporates by reference its responses to Paragraphs 1 through 57 and "Prayers for Relief" above.

## FIRST AFFIRMATIVE DEFENSE

### License

2.     Soos's claims fail because Soos granted Five Guys an express or implied license to use documents uploaded by Soos to Buzzsaw and to give third-party architects and others access to those materials to use and copy the same.

     a.    Soos's work with Five Guys involved more than just making architectural plans for individual FIVE GUYS restaurants.

     b.    In 2009, Five Guys retained Soos to assist Five Guys in developing and maintaining a uniform set of standards, specifications, and prototypical drawings reflecting the trade dress and other standards of a typical FIVE GUYS brand restaurant (the "Corporate Design Standards").

     c.    The Corporate Design Standards would include a development manual with development guidelines, checklists, standard store layouts, manufacturer specification sheets, and the like.

     d.    The purpose of the Corporate Design Standards project was to create a centralized set of materials that architects and other consultants could use when designing and building new FIVE GUYS brand restaurants in order to ensure that new restaurants conformed to Five Guys's standards and trade dress.

     e.    In order to ensure that the Corporate Design Standards would be properly accessible, Soos and Five Guys agreed that Soos would select and maintain, for a fee, a file-sharing platform to which the Corporate Design Standards would be uploaded.

f. Five Guys and Soos entered into a written agreement under which Soos agreed to assist with the Corporate Design Standards project and manage the file-sharing platform. A copy of that "A/E Services for the development and management of Corporate Design Standards" Agreement (the "Agreement") is attached hereto as Exhibit 1.

g. Soos selected Buzzsaw as the file-sharing platform and managed Buzzsaw for several years as provided in the Agreement.

h. For years, Soos uploaded standards, specifications, prototype drawings and other documents to Buzzsaw as part of the Corporate Design Standards.

i. These documents sometimes included portions of Soos plans, which were intended by Soos to serve as reference materials.

j. Five Guys never instructed Soos to upload its construction plans to Buzzsaw and, on information and belief, Soos never did.

k. Soos expressly authorized Five Guys to make the Corporate Design Standards documents uploaded to Buzzsaw by Soos available to architects and other consultants involved with the design and construction of new restaurants.

l. Alternatively, by uploading the Corporate Design Standards to Buzzsaw, Soos granted an implied license to Five Guys and its third-party consultants to use the materials uploaded to the Corporate Design Standards for their intended purpose.

m. To the extent that any of the allegedly infringing plans include material that is similar or identical to material contained in Soos plans, some or all of those similarities exist because (i) Soos uploaded its works as part of the Corporate

Design Standards and licensed others to use them or (ii) both the Soos plans and the allegedly infringing plans were created from the same Corporate Design Standards.

n.  Any conduct that Soos describes as copyright infringement was explicitly or impliedly authorized by license.

## SECOND AFFIRMATIVE DEFENSE

### Estoppel

3.  Five Guys restates and reincorporates by reference Paragraphs 1 through 2 of its Affirmative Defenses.

4.  Soos is estopped from asserting copyright ownership in the materials uploaded to Buzzsaw and from bringing its claims against Five Guys.

a.  Soos contracted with Five Guys to help Five Guys develop its Corporate Design Standards and to select and operate Buzzsaw for the purpose of making the Corporate Design Standards available to Five Guys's consultants, including third-party architects.

b.  Soos uploaded the Corporate Design Standards documents to Buzzsaw and was therefore aware of the documents on Buzzsaw.

c.  Soos was also aware of the purpose of Buzzsaw: to make the Corporate Design Standards available to third-party architects and others.

d.  Five Guys transferred its Corporate Design Standards work to DXU in 2013.

e.  Soos was aware, even after 2013, that the Corporate Design Standards maintained on Buzzsaw were still being used for the same purposes for which they were used while Soos managed the site.

f.  Even after Five Guys transferred the Corporate Design Standards project and management of Buzzsaw to DXU, Plaintiff continued to provide architectural services for individual restaurant projects.

g.  Soos, like Five Guys's other architects, had access to Buzzsaw and was aware of the materials available on the site.

h.  By agreeing with Five Guys to help create the Corporate Design Standards and select and manage Buzzsaw, and by uploading Corporate Design Standards to Buzzsaw for years, Soos gave Five Guys the impression that Five Guys's third-party architects could copy and otherwise use the Corporate Design Standards when creating new plans.

i.  Soos intended that Five Guys would act on this understanding.

j.  Five Guys acted on that understanding in a number of ways, including by:

  i.  paying Soos for its work on the Corporate Design Standards and for its management of Buzzsaw.

  ii.  Making the Corporate Design Standards available to others through Buzzsaw.

  iii.  continuing to develop its Corporate Design Standards, based in part on the Corporate Design Standards work that Soos had performed.

k.  To the extent that Soos had any rights in the materials it uploaded to Buzzsaw, it had knowledge of those rights when it first uploaded those materials.

l.  To the extent that Soos retained any copyright ownership over materials uploaded to Buzzsaw, Five Guys was unaware of that ownership.

m.  Five Guys was also unaware that Soos would attempt to assert copyright ownership over the materials in the Corporate Design Standards.

n.  Five Guys's ability to ensure that new FIVE GUYS restaurants conform to FIVE GUYS trade dress depends on its ability to use the Corporate Design Standards for their intended purpose.

o.  To the extent that Soos retained any copyright ownership in the materials uploaded to Buzzsaw, Five Guys was injured by Soos's misrepresentations insofar as Five Guys:

　　i.  paid Soos to assist with development of the Corporate Design Standards and to manage Buzzsaw;

　　ii.  used the Corporate Design Standards uploaded by Soos to continue developing Five Guys's Corporate Design Standards;

　　iii.  made the Corporate Design Standards available to others, thereby exposing Five Guys to potential copyright liability.

p.  Five Guys relied heavily on Soos's representations that Five Guys, not Soos, owned the Corporate Design Standards.

q.  Soos is therefore estopped from asserting copyright infringement and related claims against Five Guys.

## THIRD AFFIRMATIVE DEFENSE

### Waiver

5.  Five Guys restates and reincorporates by reference Paragraphs 1 through 4 of its Affirmative Defenses.

6.     By its actions stated above, Soos has relinquished its right to assert copyright ownership over materials uploaded to Buzzsaw and to bring this suit against Five Guys.

### FOURTH AFFIRMATIVE DEFENSE

### Statute of Limitations

7.     Five Guys restates and reincorporates by reference Paragraphs 1 through 6 of its Affirmative Defenses.

8.     To the extent that Soos claims infringing acts that took place before September 12, 2014, they are barred by the Copyright Act's statute of limitations.

     a.  Soos was aware, since 2009, that documents uploaded to Buzzsaw would be made available to third-party architects.

     b.  Since Soos uploaded many of the Corporate Design Standards itself, Soos was aware that it had uploaded portions of its plans to Buzzsaw as reference documents prior to 2013.

     c.  After Eric Styer left Soos, Soos sent him multiple cease and desist letters asserting, among other things, that Styer had used Soos's confidential information.

     d.  On information and belief, Eric Styer took Soos plans created for Five Guys when he left Soos and formed DXU.

     e.  To the extent that DXU used Soos plans to create its plans for Five Guys, Soos was aware, or should have been aware, that DXU had access to and was using Soos plans to create its other plans in 2013.

     f.  Soos filed its Complaint in this case on September 12, 2017.

00040907

- 18 -

Dated: March 7, 2018       Respectfully submitted,

*/s/ Kandis M. Koustenis*

Jerry William Boykin (*admitted pro hac vice*)
Kandis M. Koustenis (*admitted pro hac vice*)
Bret C. Marfut (*admitted pro hac vice*)
**PROTORAE LAW PLLC**
1921 Gallows Road, Suite 950
Tysons, VA 22182
(p) 703-749-8507; (f) 703-942-6758
jboykin@protoraelaw.com
kkoustenis@protoraelaw.com

Kenneth Ulrich
**GOLDBERG KOHN**
55 East Monroe Street
Suite 3300
Chicago, IL 60603
(p) 312-201-4000; (f) 312-332-2196
kenneth.ulrich@goldbergkohn.com

*Counsel for Defendants Five Guys Enterprises, LLC and Five Guys Operations, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2018, I electronically filed a true and correct copy of the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing (NEF) to all registered users of the Court's CM/ECF system who have filed notices of appearance in this matter.


*/s/ Bret C. Marfut*

00040907