**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SOOS & ASSOCIATES, INC., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| -v- | ) Civil Action No. 1:17-cv-06577 |
| | ) |
| FIVE GUYS ENTERPRISES, LLC, FIVE | ) |
| GUY OPERATIONS, LLC, DXU | ) |
| ARCHITECTS and ERIC STYER, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |
| FIVE GUYS ENTERPRISES, LLC, FIVE | ) |
| GUY OPERATIONS, LLC, | ) |
| | ) |
| *Third-Party Plaintiffs*, | ) |
| | ) |
| -v- | ) |
| | ) |
| DXU ARCHITECTS, | ) |
| | ) |
| *Third-Party Defendant*. | ) |

**ANSWER TO AMENDED COMPLAINT**

Defendants and Third-Party Plaintiffs Five Guys Enterprises, LLC and Five Guys

Operations, LLC (collectively, "Five Guys") responds as follows to Plaintiff's April 20, 2018

Amended Complaint:

**PRELIMINARY STATEMENT**

Plaintiff's copyright infringement claims against Five Guys fail because the allegedly

infringed expression asserted by Plaintiff does not constitute protected copyrightable expression

under copyright law. Plaintiff's claims of allegedly infringed expression include ideas, concepts,

principles, short words and phrases, and abbreviations, which lack sufficient originality and

00044486

otherwise fail to qualify for copyright protection under the Copyright Act and, therefore, cannot form the basis for Plaintiff's claims of unlawful copying. Moreover, Five Guys did not create or prepare any architectural drawings on its own but rather, hired third-party architects (including defendant and third-party defendant DXU) on which Five Guys relied to perform architectural services according to the relevant duty and standard of care, which includes refraining from copying another's work. To the extent any infringing activity took place, it was not undertaken by Five Guys. Should Five Guys be held liable for any such activity by DXU or any other architect, those architects are in turn liable to Five Guys.

Plaintiff's Digital Millennium Copyright Act ("DMCA") claims against Five Guys fails because Five Guys did not remove any copyright management information ("CMI") from any architectural drawings prepared by Plaintiff. Nor did Five Guys provide any CMI, let alone false CMI, to any architectural drawings.

With respect to damages, Plaintiff is not entitled to statutory damages or attorney's fees under the Copyright Act because the conduct on which Plaintiff bases its copyright claims began well prior to April 17, 2015, the effective date of the copyright registrations for the allegedly infringed works. Moreover, Plaintiff has suffered no actual damages as a result of any conduct by Five Guys, and no Five Guys profits can be attributed to architectural drawings. Finally, Plaintiff is not entitled to injunctive relief because any alleged injury is neither immediate nor irreparable; Plaintiff has an adequate remedy at law; the balance of hardships would not favor Plaintiff; and public policy weighs against injunctive relief.

## **ANSWER**

1. This is an action pursuant to 17 U.S.C. §101 for copyright infringement and violations of the Digital Millennium Copyright Act, and breach of contract arising out of Defendants'

unauthorized copying, distribution and creation of derivative works of Plaintiff's architectural works.

**ANSWER:** Five Guys admits that the Amended Complaint alleges copyright infringement, violations of the Digital Millennium Copyright Act, and breach of contract, but denies that Five Guys engaged in conduct constituting copyright infringement, violation of the Digital Millennium Copyright Act ("DMCA"), or breach of contract.

## THE PARTIES

2. Soos & Associates, Inc. ("Soos") is an Illinois corporation, created and organized under the laws of the state of Illinois with its principal place of business in Lincolnshire, Illinois.

   **ANSWER:** Five Guys admits the allegations of Paragraph 2.

3. On information and belief, Defendant Five Guys Enterprises, LLC ("Five Guys Enterprises"), is a Delaware limited liability company with its principal place of business in Lorton, Virginia.

   **ANSWER:** Five Guys admits the allegations of Paragraph 3.

4. On information and belief, Five Guys Operations, LLC ("Five Guys Operations") is a Delaware limited liability company with its principle place of business in Lorton, Virginia.

   **ANSWER:** Five Guys admits the allegations of Paragraph 4.

5. Defendant DXU Architects ("DXU") is an Illinois Limited Liability Company whose principal place of business is at 412 S. Wells Street, Chicago, Illinois.

   **ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 5.

6. Defendant Eric Styer ("Styer"), an individual, is a citizen of Illinois who resides at 3463 W. Mardan Drive, Long Grove, Illinois.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations Paragraph 6.

7. On information and belief, at all relevant times, Gregg S. Elstro ("Elstro") was, and identified himself as, Director of Construction for Five Guys Enterprises and Five Guys Operations. On information and belief, Elstro is a member of at least one of the Five Guys limited liability companies.

**ANSWER:** Five Guys admits that "Director of Construction" is one of the titles Mr. Elstro has held during his employment with Five Guys. Five Guys denies that Elstro is a member of either of the Defendant limited liability companies.

8. Elstro not only had access to all of Plaintiff's works discussed below, but, on information and belief, Elstro, along with other agents and representatives of Five Guys, copied and distributed the Soos copyrighted material set forth below to third parties.

**ANSWER:** Five Guys admits that Elstro had access to architectural works created for Five Guys by Plaintiff, and that Five Guys utilized these works in connection with the specific restaurant projects for which they were created and licensed to Five Guys. Five Guys denies the remaining allegations of Paragraph 8.

### JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to in 17 U.S.C. §101, *et seq*. and 28 U.S.C. § 1338(a). In addition, the Court has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367(a).

**ANSWER:** Five Guys admits the allegations of Paragraph 9.

10. Venue is proper in this Court pursuant to in 28 U.S.C. §1400(a) because Defendants can be found in this district.

> **ANSWER:** Five Guys admits the allegations of Paragraph 10.

11. Defendants Five Guys have had regular and consistent contacts with the State of Illinois sufficient to confirm personal jurisdiction, including engaging Soos & Associates repeatedly to perform architectural services in Illinois and other states.

> **ANSWER:** Five Guys admits the allegations of Paragraph 11.

## FACTS

12. Soos is a 24-year old architectural firm that performed at least 95 projects for Five Guys from 2008 to 2015. The Firm is licensed in 34 states and operates nationwide providing architectural and construction management services to private and public clients.

> **ANSWER:** Five Guys admits that Soos is an architectural services firm of approximately 24 years and admits that Five Guys engaged Soos for approximately 95 projects between 2008 and 2015. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 12.

13. Soos' client-base consists of regular, loyal clients. Over the years, Soos has invested significant time and money building its expertise in planning, designing and building all types of projects for its clients, with a significant portfolio and track record concentrated in high volume retail and restaurant projects, as well as the logistics, due diligence and site planning systems designed to meet all of its clients' project needs, including branding, integration of mechanical, plumbing and electrical services, review of zoning and building codes, and provision of the full scope of construction document services.

> **ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 13.

14. Given its years of experience in both architecture and construction, Soos has developed a particular style and mode for the preparation of its construction documents. In particular, Soos construction documents often are significantly more detailed than construction documents prepared by other architects for similar projects. In addition, Soos focuses on clarity of presentation and has created a format in the initial pages of its construction documents that puts the most important information contractors and other construction workers need and rely upon.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 14.

15. In 2008, Soos was approached by Five Guys to develop the interior and exterior architectural plans ("Construction Documents") for a number of Five Guys projects in Illinois and around the country.

**ANSWER:** Five Guys admits that beginning in or around late 2008, Plaintiff entered into contracts with Five Guys to perform architectural services for specific Five Guys restaurant location projects in Illinois and other states. Five Guys denies the remaining allegations of Paragraph 15.

16. On October 8, 2008, Soos sent Five Guys' Elstro a proposal for the construction project. A copy of the proposal is attached as Exhibit 1.

**ANSWER:** Five Guys admits the allegations of Paragraph 16.

17. Exhibit 1 was prepared from a standard proposal form Soos used with its clients.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 17.

18. The proposal (Exhibit 1) anticipated that Soos would provide architectural services for multiple Five Guys restaurants. Under the heading "Project Understanding," Exhibit 1 stated in part:

> Five Guys Burgers and Fries (client) is planning to retain Soos and Associates, Inc. (Soos) for architectural consulting services for multiple burger and fries restaurants in the Chicago/Milwaukee area…. for the purposes of this proposal it is understood that the construction documents will be from a prototype, a set of which will be provided to Soos for use in developing new projects.

   **ANSWER:**  Five Guys admits the allegations of Paragraph 18.

19. The proposal went on to define the "Scope of Services" which included a discussion of "Design Development" and "Construction Documents."

   **ANSWER:**  Five Guys admits the allegations of Paragraph 19.

20. The proposal provided that based on approved schematic design documents, "…Soos will prepare development documents…'. Those materials, in turn, would be used to create construction documents:

> Based on the approved Design Development Documents and any further minor adjustments in the scope, **Soos will prepare construction documents consisting of drawings and specifications to fix and describe the size and character of the project.** After CDs are started, changes or alterations to the project will be billed as an additional service billed hourly.

   (emphasis added)

   **ANSWER:**  Five Guys admits the allegations of Paragraph 20.

21. The Proposal expressly exempted the creation of "corporate standards" from the terms of the agreement.

   **ANSWER:**  Five Guys denies the allegations of Paragraph 21.

22. Under the section "Interior Design," the proposal provided, "In the event corporate standards are not provided or are requested to be altered these services can be provided on a proposed fee or hourly basis."

**ANSWER:** Five Guys admits the allegations of Paragraph 22.

23. "Corporate Standards" are the facts and information reflecting the branding and trade dress of a store.

**ANSWER:** Five Guys admits the term "corporate standards" could refer to "facts and information reflecting the branding and trade dress of a store." Five Guys denies that the term "corporate standards" has only one definition or refers only to "facts and information reflecting the branding and trade dress of a store."

24. The initial proposal set the cost of design development for a single project at $6000 and the cost of "Construction Documents/MPE" at $10,500.

**ANSWER:** Five Guys admits the allegations of Paragraph 24.

25. Pricing for the project was based on Five Guys' agreement to retain Soos for "multiple burger and fries restaurants in the Chicago/Milwaukee area."

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 25.

26. The proposal included a one-time license to use Soos copyrighted materials in connection with a single project.

**ANSWER:** Five Guys denies that Exhibit 1 to the Amended Complaint contains any reference to a license, one-time or otherwise, and otherwise denies the remaining allegations of Paragraph 26.

27. Under the heading "CONTRACT," the initial proposal referenced "ALA OA4- 2007," along with retainer and payment information.

    **ANSWER:** Five Guys admits the allegations of Paragraph 27.

28. ALA OA4-2007 is a form contract provided to members of the Association of Licensed Architects for use in their practices. Among other things, the contract makes clear that architects own the copyright in their materials created under the agreement and that the architect's client may only use the materials for the specific project. It expressly provides:

> OWNERSHIP AND COPYRIGHTS. The Architect and the Architect's consultant **shall be deemed the original authors and owners respectively of any materials produced under this *Agreement*** and shall retain all common law, statutory and other reserved rights, **including copyrights**. The Owner acknowledges that the Architect and the Architect's consultants have prepared **said materials** and **agrees to limit use of same to this site specific project only.** The Owner is granted **a conditional nonexclusive license to utilize the materials** produced under this *Agreement* **on this project on this site only**, which license is conditional upon payment in full to the Architect for all services performed or to be performed under this *Agreement*. **The Owner's license may be revoked upon any Owner breach of this Agreement**….

(emphasis added)

    **ANSWER:** Five Guys admits that the Association of Licensed Architects ("ALA") puts out a number of form contracts, which are updated from time to time, including "OA4" "Owner/Architect for Architectural Services (Lump Sum Fee)" and admits that this form contract includes one or more provisions relating to ownership of copyright. Five Guys denies the remaining allegations of Paragraph 28.

29. After Soos provided Five Guys with the initial proposal, the parties continued to negotiate and on or about October 15, 2008, Soos provided Five Guys' Elstro with a second proposal, attached as Exhibit 2.

    **ANSWER:** Five Guys admits the allegations of Paragraph 29.

30. The proposal reflected in Exhibit 2, like Exhibit 1, was created from Soos' standard template.

00044486                9

**ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 30.

31. Many of terms in Exhibit 2, including Design Development, Construction Documents and other materials to be provided were the same or virtually identical to the terms in Exhibit 1.

**ANSWER:**  Five Guys admits that Exhibit 2 to the Amended Complaint contains certain language that is similar to the language contained in Exhibit 1 to the Amended Complaint but denies the remaining allegations of Paragraph 31.

32. Among the differences between Exhibits 1 and 2 are a lower price negotiated by Five Guys for Design Development and Construction Documents/MPE ($4,500 and $8,000).

**ANSWER:**  Five Guys admits the allegations of Paragraph 32.

33. Exhibit 2, however, continued to reference ALA OA4-2007 under the "Contract" section of the proposal and continued to provide for a one-time license for the materials provided by Soos.

**ANSWER:**  Five Guys admits that Exhibit 2 to the Amended Complaint references "ALA OA4-2007" but denies the remaining allegations of Paragraph 33.

34. The parties completed their negotiations and in early November Soos sent Five Guys a final contract.

**ANSWER:**  Five Guys admits that Plaintiff sent a draft contract for Five Guys's review and approval on or around November 12, 2008 but denies the remaining allegations of Paragraph 34.

35. Attached as Exhibit 3 is a copy of a messenger transmittal from Styer to Elstro dated November 12, 2008 transmitting and attaching a copy of the agreement reached between Soos and Five Guys.

**ANSWER:** Five Guys admits that Exhibit 3 to the Amended Complaint appears to be a copy of a messenger transmittal dated November 12, 2008 from Eric Styer to Gregg Elstro attaching a draft contract for Five Guys's review and approval. Five Guys denies the remaining allegations of Paragraph 35.

36. Exhibit 3 states, among other things, "Contact Robert Soos at our office with any questions regarding the contract. Once approved please sign the contract and send it back to our office with the retainer. We will in turn sign the contract and send you a copy for your records."

**ANSWER:** Five Guys admits the allegations of Paragraph 36.

37. Robert Soos is vice president and one of the principals of Soos.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations Paragraph 37.

38. Both Five Guys and Soos executed the contract attached to Exhibit 3. A copy of the executed contract is attached as Exhibit 4.

**ANSWER:** Five Guys admits that Exhibit 4 to the Amended Complaint appears to be a copy of a fully-executed contract dated November 11, 2008 between Plaintiff and Defendant Five Guys Operations. Five Guys denies the remaining allegations of Paragraph 38.

39. Section 7.0 of Exhibit 4 is entitled "**OWNERSHIP AND COPYRIGHTS**" and contains the same language quoted in paragraph 28 above.

**ANSWER:** Five Guys admits the allegations of Paragraph 39.

40. Exhibit 4 contains language (at its Exhibit C) stating:

If Architect and owner should become involved in any dispute or litigation the prevailing party shall be entitled to an award of reasonable attorney's fees and costs.

**ANSWER:**  Five Guys admits the allegations of Paragraph 40.

41. Exhibit 4 provides for "Design Development."

**ANSWER:**  Five Guys admits the allegations of Paragraph 41.

42. Exhibit 4 provides for the preparation and use of "Construction Documents."

**ANSWER:**  Five Guys admits that Exhibit 4 to the Amended Complaint contains a reference to preparation of "Construction Documents" but denies the remaining allegations of Paragraph 42.

43. Exhibit 4 does not commit Soos to prepare Corporate Standards.

**ANSWER:**  Five Guys admits the allegations of Paragraph 43.

44. Soos goes to great lengths to protect its intellectual property rights in work product provided to clients.

**ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 44.

45. Even though as a matter of law Soos owned all of the copyrights in the plans it created for Five Guys, from the time these plans were reduced to a tangible form of expression, Soos reemphasized this point again and again to Five Guys.

**ANSWER:**  Five Guys denies the allegations of Paragraph 45.

46. For example, all of the written contracts between Soos and Five Guys providing for the creation of Construction Documents spelled out Soos' copyright ownership and contained the same or virtually the same language as set forth in Section 7 of Exhibit 4:

The Architect and the Architects consultants shall be deemed the original authors and owners respectively of any materials produced under this agreement and shall retain all common law, statutory and other reserved rights, including copyrights…

**ANSWER:** Five Guys admits that Exhibit 4 to the Amended Complaint includes the quoted language, and that other Soos contracts for architectural services associated with specific Five Guys restaurant locations also contain language similar or identical to this language. Five Guys denies the allegation that all contracts between Soos and Five Guys contain language that is the same or virtually the same as the quoted language because (1) it has not reviewed each and every contract between Soos and Five Guys over the years and (2) not all of the contracts between Plaintiff and Five Guys are agreements for site-specific construction drawings. Five Guys denies any remaining allegations of Paragraph 46.

47. In addition, each of the Construction Documents prepared by Soos for Five Guys bears the following copyright management information language:

These drawings and specifications are the confidential and proprietary property of Soos & Associates, Inc. and shall not be copied or reproduced without written authorization…. Use of these drawings for reference or example on another project requires the services of Soos & Associates, Inc. Reproduction of the contract documents for reuse on another project is not authorized.

*E.g.*, Exs, 5, 6 and 7.

**ANSWER:** Five Guys admits that Exhibits 5, 6, and 7 to the Amended Complaint include the quoted language, and that other architectural drawings prepared by Soos for specific Five Guys restaurant locations also contain language similar or identical to this language. Five Guys denies the allegation that all architectural drawings or specifications prepared by Soos

00044486          13

contain language that is the same or virtually the same as the quoted language because it has not reviewed each and every set of architectural drawings prepared by Plaintiff and denies any remaining allegations of Paragraph 47.

48. Exhibits 5, 6 and 7 contain three original Construction Documents prepared by Soos in connection with its work for Five Guys.

**ANSWER:** Five Guys admits that Exhibits 5, 6 and 7 to the Amended Complaint appear to be copies of architectural plans prepared by Soos for Five Guys but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 48.

49. In April 2015, Soos registered the copyrights in Exhibits 5, 6 and 7. Their respective original copyright registration certificates are attached.

**ANSWER:** Five Guys admits that Exhibits 5, 6 and 7 to the Amended Complaint appear to be copies of architectural drawings, as well as copies of Certificates of Registration for those architectural drawings, all bearing effective dates of registration of April 17, 2015. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 49.

50. Before Soos filed this action, it submitted requests for supplemental registrations to amplify the information given in its registrations. As of the date of this amended complaint, two re-issued certificates have been received. Copies of these amended registrations are attached as Exhibit 8.

**ANSWER:** Five Guys admits that Exhibit 8 to the Amended Complaint appears to be copies of two Supplementary Registrations bearing effective dates of September 5, 2017. Five

Guys lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 50.

51. Soos regularly reminded Five Guys employees that Soos owned the copyright in its materials and on more than one occasion warned Five Guys that its materials should not be shared with third parties without Soos' authorization.

**ANSWER:** Five Guys denies the allegations of Paragraph 51.

52. Five Guys provided Soos with a former architect's Construction Documents. A copy of the Construction Documents is attached as Exhibit 9.

**ANSWER:** Five Guys admits that Exhibit 9 to the Amended Complaint appears to be a copy of architectural plans prepared by The Heiserman Group for Five Guys. Five Guys further admits that early in the relationship between Plaintiff and Five Guys, Five Guys did provide Plaintiff with at least one set of plans previously prepared by The Heiserman Group for Five Guys. Five Guys denies the remaining allegations of Paragraph 52.

53. As is its practice, Soos began developing its own system of drawings, abbreviations, construction notes and other materials to use in its initial and subsequent plans.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 53.

54. Construction Documents can involve far more than simply creating the floor plan of a given space.

**ANSWER:** Five Guys admits that construction drawings include more than the floor plan of a given space but denies the remaining allegations of Paragraph 54.

55. Construction Documents like those developed by Soos are filled with materials that plumbers, electricians and other construction workers can rely on in building and developing projects.

**ANSWER:** Five Guys admits the allegations of Paragraph 55.

56. Architects develop Construction Documents both textually and graphically.

**ANSWER:** Five Guys admits that construction drawings include both text and graphics but denies the remaining allegations of Paragraph 56 because, as stated, Paragraph 56 is ambiguous and could be read to seek an admission or denial as to all architects and all architectural drawings.

57. In developing its series of Construction Documents for various Five Guys locations, Soos created its own original expression, including specific text and illustrations.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 57.

58. By the summer of 2009, Soos had contracted to create at least a half-dozen construction projects for Five Guys governed by the agreed-upon terms of Exhibit 4.

**ANSWER:** Five Guys admits that Soos and Five Guys had contracted for architectural services for several restaurant locations by the summer of 2009 using contracts similar to Exhibit 4 but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations because it has neither reviewed each and every agreement entered into with Plaintiff nor confirmed the exact number of projects undertaken with Plaintiff as of the summer of 2009.

59. The agreements between the parties expressly excluded the creation of "corporate standards" from the Construction Document projects, stating:

**Interior Design:** In the event corporate standards are not provided or are requested to be altered these services can be provided on a proposed fee or hourly basis.

**ANSWER:** Five Guys admits that Exhibit 4 to the Amended Complaint includes the quoted language, and that other Soos contracts for architectural services associated with specific Five Guys restaurant locations also contain language similar or identical to this language. Five Guys denies the remaining allegations of Paragraph 59.

60. In the summer of 2009, Five Guys requested that Soos submit a proposal to create a corporate standards program for Five Guys. In August 2009, Soos submitted a proposal using its standard proposal template (the "Standards Proposal"). A copy of the proposal is attached as Exhibit 10.

**ANSWER:** Five Guys admits that Exhibit 10 to the Amended Complaint appears to be a copy of a proposal dated August 11, 2009 from Melanie Soos to Gregg Elstro, which is nearly identical to the August 11, 2009 proposal located in Five Guys's business records. Five Guys denies the remaining allegations of Paragraph 60.

61. Among other things, Soos proposed "creat[ing] and manag[ing] a distribution platform for [Five Guys'] corporate design/development standards." According to the Standards Proposal, the platform would allow Five Guys to "view and download files needed to assist in maintaining the restaurants branded image and approved specification during development, design and construction."

**ANSWER:** Five Guys admits that Exhibit 10 to the Amended Complaint contains the language quoted in Paragraph 61. Five Guys denies the remaining allegations of Paragraph 61.

62. Soos proposed charging $12,700 for the Development Manual and CAD files and architectural support documents.

**ANSWER:** Five Guys admits the allegations of Paragraph 62.

00044486                                        17

63. The word "prototype" does not appear in the Standards Proposal.

**ANSWER:** Five Guys admits that Exhibit 10 to the Amended Complaint does not contain the word "prototype" but denies the allegation or implication that the proposal for architectural services outlined in Exhibit 10 excludes the preparation of prototypes.

64. Unlike the Construction Document projects agreements, the Standards Proposal does not address the creation of Construction Documents.

**ANSWER:** Five Guys denies the allegations of Paragraph 64.

65. Neither the word "copyright" or "license" appears in the Standards Proposal.

**ANSWER:** Five Guys admits that Exhibit 10 to the Amended Complaint does not contain the words "copyright" or "license" but denies the allegation or implication that the proposal for architectural services outlined in Exhibit 10 excludes a license to Five Guys.

66. Unlike the earlier Construction Document proposals and subsequent Construction Document agreements, under the section entitled "Contract," the Standards Proposal does not incorporate an ALA agreement.

**ANSWER:** Five Guys admits the allegations of Paragraph 66.

67. Instead, the Standards Proposal provided that acceptance of the proposal required a Five Guys signature. It states: "**CONTRACT:** This proposal signed."

**ANSWER:** Five Guys admits that Exhibit 10 to the Amended Complaint states, "CONTRACT: This proposal signed" but denies the remaining allegations of Paragraph 67.

68. Five Guys never signed the Standards Proposal.

**ANSWER:**   Five Guys admits it has not yet found a signed version of the document attached as Exhibit 10 to the Amended Complaint. At this time, Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegation that Five Guys never signed Exhibit 10 to the Amended Complaint or a similar document. Five Guys states that Five Guys and Plaintiff entered into a contract based on the material terms of the proposal outlined in Exhibit 10. Five Guys denies any remaining allegations of Paragraph 68.

69. Soos, however, did provide standards materials "on a proposed fee or hourly basis" as set forth in Exhibit 4 and other Construction Documents agreements.

**ANSWER:**   Five Guys admits that Plaintiff provided standards materials to Five Guys but denies that it did so under the contract attached as Exhibit 4 to the Amended Complaint or any other agreement related to site-specific restaurant projects. Five Guys further denies the remaining allegations of Paragraph 69.

70. From around 2009 to 2013, Soos not only provided Five Guys with a hard copy manual containing sample floor plans and information like equipment vendors' specifications, Soos also worked with Five Guys to create design standards. It uploaded some of the supporting information to a file-sharing platform called "Buzzsaw," where the materials could be accessed by third-party architects and other consultants.

**ANSWER:**   Five Guys admits the allegations of Paragraph 70.

71. After August 2009, Soos continued providing architectural services for Five Guys and created at least 95 sets of Construction Documents for company-owned and franchise restaurants across the country.

**ANSWER:** Five Guys admits that Plaintiff provided architectural services to Five Guys for approximately 95 site-specific restaurant projects located within the United States but denies the remaining allegations of Paragraph 71.

72. Every contract for the creation of Construction Documents included license language addressing "OWNERSHIP AND COPYRIGHTS" either identical to or substantially similar to Paragraph 7.0 in Exhibit 4.

**ANSWER:** Five Guys admits that Exhibit 4 to the Amended Complaint refers to "ownership and copyrights" in Section 7.0 of Exhibit 4, and that other Soos contracts for architectural services associated with site-specific Five Guys restaurant locations also contain language similar or identical to this language. Five Guys denies the allegation that all contracts between Soos and Five Guys contain language that is the same or virtually the same as the quoted language because (1) it has not reviewed each and every contract between Soos and Five Guys over the years and (2) not all of the contracts between Plaintiff and Five Guys are agreements for site-specific construction drawings. Five Guys denies any remaining allegations of Paragraph 72.

73. No agreements transferred ownership of copyrights to Five Guys.

**ANSWER:** Five Guys admits that the agreement attached as Exhibit 4 to the Amended Complaint and other contracts for architectural services associated with site-specific Five Guys restaurant locations did not transfer ownership of copyrights to Five Guys but denies the remaining allegations of Paragraph 73.

74. No agreement provided more than a one-time conditional nonexclusive license to use the materials produced on a particular site. Attached as Exhibit 11, is one such agreement.

**ANSWER:** Five Guys admits that the agreements attached as Exhibits 4 and 11 to the Amended Complaint and other contracts for architectural services associated with site-specific Five Guys restaurant locations provided no more than a one-time conditional nonexclusive license to use the instruments of service related to each particular site. Five Guys denies the remaining allegations of Paragraph 74.

75. Exhibit 11, executed in October 2009, references the construction project and construction documents for the Five Guys store located at 2141 Willow, Northbrook, Illinois. Those Construction Documents are the same copyrighted materials registered with the Copyright Office and reflected in Exhibit 5.

**ANSWER:** Five Guys admits that Exhibit 11 to the Amended Complaint references a project for a Five Guys store located at 2141 Willow, Northbrook, Illinois and admits that Exhibit 5 to the Amended Complaint appears to be a copy of an architectural drawing, as well as a copy of a Certificate of Registration bearing the effective date of registration of April 17, 2015. Five Guys lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 75.

76. Though Soos did not publish its architectural plans, or transfer the copyrights on these materials to Five Guys, Soos did provide Five Guys with a copy of every plan Soos prepared for Five Guys.

**ANSWER:** Five Guys admits that Plaintiff provided Five Guys with copies of the architectural drawings Plaintiff prepared for Five Guys. Five Guys denies the remaining allegations of Paragraph 76.

77. Styer was one of the Soos architects assigned by Soos' principals to work on the Five Guys projects for Soos.

**ANSWER:**   Five Guys admits that Styer worked on Five Guys projects but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 77.

78. Styer started working for Soos in 2000 and ultimately became a project architect.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 78.

79. Before he came to Soos, Styer had about five years of design and construction experience but was not a licensed architect.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 79.

80. Gonzales also was assigned by Soos' principals to work on the Five Guys projects. He began working for Soos in March 2011 as a Project Architect. When he came to Soos, his experience was limited to residential architecture and he said he was seeking to broaden his experience and gain an in-depth knowledge of other areas of architecture.

**ANSWER:**   Five Guys admits that Gonzales worked on Five Guys projects but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 80.

81. Gonzales was responsible for assisting in producing, managing and assembling complete and accurate site surveys and construction documents for the Soos clients, as well as being proficient in AutoCad.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 81.

82. During their employment, both Styer and Gonzales were trained in the Soos confidential business practices and given access to confidential information.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 82.

83. Since 2004, Soos has required all new employees to sign an agreement as a condition of employment that, among other things, acknowledges that the plans, drawings, and work product of the Firm are proprietary and belong to the Firm and that prohibits employees from copying or using Soos confidential information except for the Soos' benefit.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 83.

84. In 2006, Soos rolled out a revised Employee Handbook to replace an older version of the Handbook, and required each of its employees to sign an Acknowledgment indicating that they reviewed, understood and will comply with the restrictions included in the Handbook as a condition of their employment, or continued employment, with Soos (the "Handbook Acknowledgment").

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 84.

85. As a condition of their employment and continued employment with the Firm, Styer and Gonzales reviewed and executed the Handbook Acknowledgment, agreeing to abide by it terms.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 85.

86. Styer and Gonzales also agreed to comply with other policies and restrictions in the Employee Handbook, including the following:

--*Protecting Firm Information Policy* – which prohibits employees from improperly or accidentally disclosing Confidential Information, or from discussing the Firm's confidential business with anyone other than for employment purposes;

--*Conflict of Interest/Code of Ethics Policy* – which restricts employee from using their position with the Firm or its clients "for private gain, to advance personal interests or to obtain favors or benefits for themselves, members of their families or any other individuals, corporations or business entities;"

--*Care of Equipment Policy* – which restricts employees from removing Company property or equipment from the premises without management authorization; and

--*Outside Employment Policy* – which prohibits employees from working for a competitor or taking an ownership position with a competitor, and from using the Company's "property, equipment or facilities in connection with outside work."

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 86.

87. Styer and Gonzales would not have been employed, or continue to be employed, by Soos or provided with access to the Soos Confidential Information but for their respective agreements to abide by the terms of the Employee Agreements and all of the provisions in the Employee Handbook.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 87.

88. In late June 2013, Soos received a phone call came for Styer from Phenix Salon ("Phenix"), a former Soos client. Styer accepted the call, even though Soos had terminated its relationship with Phenix because of non-payment of Soos invoices.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 88.

89. Because there was no reason for this former client to contact Styer and it seemed unusual, Soos principals decided to review the cell phone records when the next billing cycle became available in July.

    **ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 89.

90. On July 12, 2013, Soos principals reviewed the cell phone records and discovered ongoing phone calls between Styer and Phenix. Likewise, Styer's business email communications revealed ongoing emails between the two.

    **ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 90.

91. Soos learned that Styer was providing work to Phenix even though Soos officially had terminated its relationship with this client in April 2013.

    **ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 91.

92. Without Soos' knowledge or approval, and even though he knew his employer Soos had made the decision to sever ties with this client, Styer used Soos letterhead, intellectual property and equipment to provide ongoing architectural services for Phenix.

    **ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 92.

93. The correspondence discovered on Styer's work desktop computer revealed projects for Phenix in Deer Park, Roosevelt Road and Michigan Avenue, as well as references to design work for 30 additional salons.

**ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 93.

94. In an apparent effort to help conceal this activity, Styer stored all of this correspondence on the local drive of his Soos desktop computer, rather than on than on Soos' network.

**ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 94.

95. Soos' typically required and requires third-party consultants who were hired by Soos to contribute to a Soos client project to bill for such work through Soos.

**ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 95.

96. As part of his effort to conceal his activities on behalf of Phenix from Soos, Styer, however, directed the third-party consulting engineer to invoice Phenix directly for his engineering services to prevent Soos from discovering Styer's involvement.

**ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 96.

97. Soos' phone records, email transmissions and work letters show consistent and ongoing contact between Styer and Phenix.

**ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 97.

98. While the records do not reveal how Styer was paid for these services for Phenix, Soos did not receive any compensation for this work done by Styer. On information and belief, Styer or DXU was paid directly by Phenix or the work was done with the understanding that there would be an ongoing relationship for the benefit of Styer and DXU.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 98.

99. Not only was Styer's work for Phenix unauthorized, it potentially exposed Soos to liability. Although the work was being done under Soos' name and licensure, Soos was unaware of the work and had no oversight ability.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 99.

100. On July 13, 2013, Soos discovered that Styer had incorporated a competitive business on April 5, 2013 under the name DXU LLC, an Illinois limited liability company.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 100.

101. Soos also discovered that Styer had pursued and begun work for a new client, Porsche Design Group, using Soos' email system, but with the apparent intent of billing the work through his new business.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 101.

102. On July 9, 10 and 11, 2013, while still employed by Soos, Styer agreed to provide pricing for this new client. Styer proposed that he and DXU, rather than Soos, would perform this work.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 102.

103.     On Saturday evening, July 13, 2013, Soos' principals went to Styer's house to discuss their findings and to terminate Styer. He was not home but his company car was parked in the driveway. The owners used their set of keys to the company car and drove it home.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 103.

104.     In the center console of the company car was a computer hard drive. Upon review of the hard drive, Soos discovered that it contained a massive download of the Soos' files and intellectual property, including, but not limited to, the Soos proposals, contracts with clients, project files containing the Soos Construction Documents, records and client correspondence, CAD standards, hiring and personnel documents, bid forms, a CAD disclaimer, the Soos' copyrighted drawing library, letter formats, rendering tools, Revit standards, site inspection checklists, and specs for all of Soos' projects.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 104.

105.     In short, the hard drive contained, from soup to nuts, Soos' entire business.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 105.

106.     Later that night, Styer called the Soos principals to inquire about the company car. They confronted Styer on their discovery of Styer's competitive business activities and terminated his employment.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 106.

107.     Two days later, on Monday, July 15, 2013, Styer wrote the owners an email demanding the return of his personal property, including a "personal hard-drive (note this piece of

00044486                                    28

equipment does not have a standard Soos equipment label on it, so it is clearly understood by anyone employed at Soos to be personal. Furthermore, you do not have permission to view, copy or delete any files on this drive). . . ." By this time, the hard drive already had been accessed; it did not contain a single, solitary personal document of Styer.

    **ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 107.

108.    Rather, the hard drive shows that Styer methodically and surreptitiously (typically between the hours of 4:00 a.m. and 6:00 a.m.) had been downloading the Soos' copyrighted material and confidential information.

    **ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 108.

109.    Upon Styer's termination in July 2013, the Soos principals met with each of its employees, including Gonzales and reminded him of his duties and obligations to Soos and cautioned him to abide by his contractual obligations.

    **ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 109.

110.    Gonzales promised that he would not engage in any wrongful conduct.

    **ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 110.

111.    Gonzales voluntarily resigned from Soos on September 18, 2013 with an effective date of October 2, 2013.

    **ANSWER:**  Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 111.

112.   Prior to leaving Soos, when the principals were out of the office, Gonzales requested access to the Soos Profitability Report for Five Guys. The Profitability Report includes detailed financial information regarding the work performed, specifically including the Soos' billed hours and amount of time spent on the various projects, as well as the Soos profit margins.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 112.

113.   When he resigned from Soos, Gonzalez told one of the owners that the commute was too much for him and that he was going to do residential work out of his house.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 113.

114.   Shortly after leaving Soos, Gonzalez joined Styer's company, DXU.

**ANSWER:**   Five Guys admits that Gonzales joined DXU at some time after leaving Soos but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 114.

115.   Prior to Styer's termination, Soos rarely uploaded Five Guys' Construction Documents in CAD format to the file-sharing site Buzzsaw.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 115 because as of today's date Five Guys has been unable to access all historical documents on Buzzsaw.

116.   Shortly after Styer was terminated, dozens of Five Guys Construction Documents in CAD format were uploaded to the file-sharing site Buzzsaw.

**ANSWER:** Five Guys admits that Plaintiff continued to upload materials to the Buzzsaw platform after Styer was terminated but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations Paragraph 116 because as of today's date Five Guys has been unable to access all historical documents on Buzzsaw.

117. On information and belief, many of these same CAD documents were downloaded to an IP address that roughly corresponds with Styer's home.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 117.

118. The files were uploaded without the knowledge of Soos' principles [sic].

**ANSWER:** Five Guys denies the allegations of Paragraph 118.

119. On information and belief, Gonzales was responsible for uploading CAD Construction Documents and other Soos materials.

**ANSWER:** Five Guys admits that Gonzales was one of Plaintiff's employees who uploaded materials to Buzzsaw but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 119.

120. On information and belief, Gonzales knew that Styer would download the CAD Construction Documents for use at DXU.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 120.

121. Five Guys was aware that CAD Construction Documents were downloaded and provided to DXU.

**ANSWER:** Five Guys admits that DXU was at some point in time given access to the Buzzsaw platform but denies the remaining allegations of Paragraph 121.

122.  After Styer formed DXU, Five Guys transferred its business to DXU.

**ANSWER:** Five Guys admits the allegations of Paragraph 122.

123.  DXU immediately began copying and incorporating Soos' copyrighted work into the Construction Documents it created for Five Guys.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 123.

124.  Attached as Exhibit 12, is a copy of an early DXU plan. The highlighted portions reflect some, but not all, of the copyrighted expression taken verbatim from Soos' prior drawings to which Five Guys had access including the format, layout, text, illustration and taxonomies of Soos' copyrighted works.

**ANSWER:** Five Guys admits that Exhibit 12 to the Amended Complaint appears to be a copy of a DXU plan for a Five Guys restaurant location in Warrenton, Virginia, but denies the remaining allegations of Paragraph 124.

125.  DXU did not limit its copying of Soos' copyrighted work to only the Construction Documents it prepared for Five Guys. DXU used Soos' format, layout, text, illustration and taxonomies for work it prepared for other clients as well.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 125.

126.  Attached as Exhibit 13, is a set of Construction Documents DXU prepared for a company called "the Melt Shop."

**ANSWER:** Five Guys admits that Exhibit 13 to the Amended Complaint appears to be a copy of construction drawings prepared by DXU for an entity called Melt Shop but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 126.

127.  In Exhibit 13, DXU directly copied Soos' copyrighted expression including the format, layout, text illustration and taxonomies contained its copyrighted works.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 127.

128.  On information and belief, DXU incorporated Soos' copyrighted expression into all or almost all of the Construction Documents it prepared for its retail customers since DXU's inception.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 128.

129.  On information and belief, each of the DXU drawings derived from a prior Soos' work contain some or all of the copyrightable expression claimed in one or more of the works subject to the copyright registrations attached to this amended complaint. See Exhibits 5-7.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 129.

130.  Originally, Soos understood that only the Construction Documents prepared for Five Guys by DXU contained its copyrighted expression. In the months leading up to the lawsuit, through filing Freedom of Information requests and other channels, Soos uncovered a number of Construction Documents prepared by other architects' for new Five Guys' locations which incorporate Soos' copyrighted expression from previously completed site-specific plans Soos furnished to Five Guys.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 130.

131. Exhibit 14, prepared by Saffran-Kilpatrick Architects, reflects just one of several plans incorporating Soos' copyrighted format, layout, text, illustrations and taxonomies used by other Five Guys' architects work. The highlighted portions of this exhibit reflect portions of Soos' copyrighted material taken and used without Soos' authorization.

**ANSWER:** Five Guys admits that Exhibit 14 to the Amended Complaint appears to be a copy of architectural drawings prepared by Saffron-Kilpatrick Architects but denies the remaining allegations of Paragraph 131.

132. Although some infringement by other Five Guys architects may have occurred before 2013, based on preliminary investigations by Soos, the widespread copying of Soos' copyrighted format, layout, text, illustrations and taxonomies by architects other than DXU did not begin in earnest until late 2015 or early 2016, long after Five Guys had terminated its relationship with Soos.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 132.

133. Saffran-Kilpatrick Architects was fully capable of creating Construction Documents for Five Guys that did not incorporate Soos' copyrighted format, layout, text, illustrations and taxonomies. Attached as Exhibit 15 is a set of Construction Documents prepared in 2012 which, on information and belief, was prepared by one of the predecessors of Saffran-Kilpatrick. The vast majority of its format, layout, text, illustrations and taxonomies is markedly different from that used by Soos.

**ANSWER:** Five Guys admits that Exhibit 15 to the Amended Complaint appears to be a plan created by Yvonne Y. Kilpatrick Architect for a Five Guys restaurant and that certain elements of Exhibit 15 are different from certain elements of Exhibits 5, 6, and 7 of the

Amended Complaint. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 133.

134.    At some point in 2016, after Five Guys ended its relationship with Soos, it ordered Saffron-Kirkpatrick and, on information and belief, its other architects, to use specific templates or Five Guys' "standard forms" which copied nearly verbatim from Soos' protected expressions including the format, layout, text, illustrations and taxonomies.

**ANSWER:**  Five Guys admits that since the inception of its use of the Buzzsaw platform, Five Guys has encouraged its architects to access, view, and adhere to the Five Guys trade dress, design standards, specifications, and other standard information such as preferred vendors and equipment, which were housed on the Buzzsaw platform. Five Guys denies the remaining allegations of Paragraph 134.

135.    Although some templates included DXU's name in the title block and may have been provided to Five Guys by DXU, Styer and Gonzales, the templates were provided directly to the outside architects from Five Guys and these architects were instructed they had no choice but to use the templates.

**ANSWER:**  Five Guys denies the allegations of Paragraph 135.

136.    Examples of the templates are attached as Exhibit 16.

**ANSWER:**  Five Guys admits that Exhibit 16 appears to be a copy of a prototype plan created by DXU for Five Guys but denies the remaining allegations of Paragraph 136.

137.    Exhibit 16 incorporates Soos' copyrighted material, including its format, layout, text, illustrations and taxonomies.

**ANSWER:**  Five Guys denies the allegations of Paragraph 137.

138.   Not only did Five Guys insist that outside architects use its templates like those reflected in Exhibit 16, even though Five Guys knew that Soos claimed copyright ownership in materials created by Soos, Five Guys began requiring its outside architects to place Five Guys copyright management information ("CMI") into the infringing Construction Documents using the Soos works. For example, Exhibit 14 states:

THESE DRAWINGS AND SPECIFICATIONS ARE THE CONFIDENTIAL AND PROPRIETARY PROPERTY OF FIVE GUYS ENTERPRISES, LLC AND SHALL NOT BE COPIED OR REPRODUCED WITHOUT WRITTEN AUTHORIZATION.

**ANSWER:**   Five Guys admits that since the inception of its use of the Buzzsaw platform, Five Guys has encouraged its architects to access, view, and adhere to the Five Guys trade dress, design standards, specifications, and other standard information such as preferred vendors and equipment, which were housed on the Buzzsaw platform. Five Guys further admits that Exhibit 14 to the Amended Complaint includes the quoted copyright language because Exhibit 14's architect, Saffran-Kilpatrick Architects, assigned to Five Guys its rights in the plans reflected in Exhibit 14, and Five Guys relied on the architect's expertise, professional responsibility, and representations (express and implied) that the architect owned the intellectual property rights it was assigning to Five Guys. Five Guys denies the remaining allegations of Paragraph 138.

139.   Even though Five Guys was provided with nearly 100 sets of Construction Documents by Soos and executed multiple agreements with Soos acknowledging Soos' copyright ownership in its Construction Drawings, for several years Five Guys not only has required the same outside architects to whom it provided infringing templates to execute agreements assigning all rights, including copyrights, to Five Guys but also to include language acknowledging that all of the work contained in the Construction Drawings "are the original work product, of, are owned by and are the property" of Five Guys. A copy of the form is attached as Exhibit 17.

**ANSWER:** Five Guys admits that since the inception of its use of the Buzzsaw platform, Five Guys has encouraged its architects to access, view, and adhere to the Five Guys trade dress, design standards, specifications, and other standard information such as preferred vendors and equipment, which were housed on the Buzzsaw platform. Five Guys further admits that Exhibit 17 to the Amended Complaint appears to be a copy of an agreement Five Guys has used with certain architects in which the architect assigns to Five Guys its rights in the architectural plans prepared by the architect for Five Guys. Five Guys relied on the architect's expertise, professional responsibility, and representations (express and implied) that the architect owned the intellectual property rights it was assigning to Five Guys. Five Guys also admits that Soos and Five Guys have entered into agreements for the preparation of architectural plans for approximately 95 site-specific restaurant location projects but denies the remaining allegations of Paragraph 139.

140. In other words, Five Guys attempted to mislead third party architects into believing Five Guys owned the copyrights in the templates Five Guys demanded they use.

**ANSWER:** Five Guys denies the allegations of Paragraph 140.

141. In addition, Five Guys' claims of copyright ownership were not just limited to Construction Documents prepared for Five Guys restaurants.

**ANSWER:** Five Guys denies the allegations of Paragraph 141.

142. For example, Exhibit 13, the Construction Documents prepared by DXU for The Melt Shop actually contains language similar to the language used in Exhibits 14 and 16, which expressly asserts *Five Guys'* ownership of the Construction Documents prepared for a completely different entity.

**ANSWER:** Five Guys admits that the Melt Shop plan attached as Exhibit 13 to the Amended Complaint includes the following language: "These drawings and specifications are the confidential and proprietary property of Five Guys Enterprises, LLC and shall not be copied or reproduced without written authorization." Five Guys denies that it was in any way involved with preparation of the plans attached as Exhibit 13 and denies the remaining allegations of Paragraph 142.

143.    On information and belief, Five Guys has made similar claims and/or provided similar copyright management information on Construction Documents for other unrelated entities.

**ANSWER:** Five Guys denies the allegations of Paragraph 143.

144.    Copies of Construction Documents containing Soos' copyright material with Five false copyright management information are available on the internet. See, e.g. http://ftp.envisionky.com/MORIAH/03%20Five%20Guys%20Drawings.pdf

**ANSWER:** Five Guys admits that the link provided in Paragraph 144 resolves to a private file transfer protocol (FTP) site, which appears to have been set up and maintained by the contractor, Envision Contractors, LLC, for use during the 2016 construction of that particular Five Guys restaurant location project in Owensboro, Kentucky. Five Guys denies the remaining allegations of Paragraph 144.

145.    As set forth above, Five Guys was fully aware of Soos' claims of copyright.

**ANSWER:** Five Guys admits that it was aware of Plaintiff's claims of copyright in the architectural plans it prepared for site-specific Five Guys restaurant locations but denies the remaining allegations of Paragraph 145.

146.    As Soos employees, Styer, Gonzales and, by extension, DXU also were aware of Soos'
         copyright claims.

    **ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 146.

147.    Five Guys also was aware of Soos' copyrights in its works. Not only did Five Guys
         execute multiple agreements acknowledging this very fact, but every Construction Document
         provided to Five Guys from Soos was marked with a legend expressing Soos' ownership of
         the work.

    **ANSWER:**   Five Guys admits that it was aware of Plaintiff's claims of copyright in the

architectural plans it prepared for site-specific Five Guys restaurant locations. Five Guys also

admits that the agreements and construction drawings corresponding to Soos's architectural

services for site-specific Five Guys restaurant locations contained language expressing Soos's

claimed ownership of intellectual property rights, including copyright, in the plans for that

individual Five Guys restaurant location. Five Guys denies the remaining allegations of

Paragraph 147.

148.    In 2015, Soos detected that Construction Documents prepared for Core Power Yoga, who
         apparently had become a client of DXU, copied a significant amount of expression from
         Soos copyrightable works. A prior counsel for Soos wrote to Core Power Yoga regarding the
         use of Soos' copyrighted materials.

    **ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about

the truth of the allegations of Paragraph 148.

149.    Shortly thereafter, counsel for DXU wrote to Soos' former counsel demanding, among
         other things, "proof of copyright registration for each technical drawing."

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 149.

150. In early August 2015, Soos' former counsel showed DXU's counsel examples of Soos' "copyright-registered materials" infringed by Styer and DXU. At that time, counsel for DXU said it would respond with a settlement offer by August 26, 2015. It never did. See letter, attached as Exhibit 18.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 150, except admits that Exhibit 18 to the Amended Complaint appears to be a copy of a September 1, 2015 letter between counsel for Soos and counsel for DXU.

151. With full knowledge of Soos' claims, DXU and Styer doubled down and not only continued using Soos' copyrighted work in its Construction Drawings, but began removing Soos' CMI from its title blocks and replacing it with either its own or Five Guys CMI. DXU and Styer did make a few minor changes, like changing the page numbers, but it continued using Soos' format, layout, text, illustrations and taxonomies.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 151.

152. Likewise, not only has Five Guys known since 2008 that Soos claimed a copyright in the works it created for Five Guys, in August 2017, Soos wrote to Five Guys and identified specific acts of infringement as well as violations of the Digital Millennium Copyright Act. Despite these warnings, Five Guys continues to cause the creation of Construction Documents which contained Soos' copyrighted materials with Soos' CMI removed and replaced by Five Guys' CMI.

**ANSWER:** Five Guys admits that it has known since approximately 2008/2009 that Soos claimed copyright ownership in some of its works and that it received a letter from Soos in

August 2017 identifying alleged acts of infringement and violations of the DMCA but denies the remaining allegations of Paragraph 152.

## COUNT I

### Copyright Infringement

153.    The Construction Documents prepared by Soos for Five Guys were the original works of Soos and the copyrights in these works belonged to Soos. Some of the copyrightable expression in these works includes the individual drawings and text, format, layout, taxonomies, and selection and arrangement of the materials in the drawings, all of which were original to Soos.

**ANSWER:**   Five Guys denies the allegations of Paragraph 153.

154.    Each of the Defendants had access to the Construction Documents attached as Exhibit 5, 6 and 7 as well as all of Soos' other Construction Documents prepared for Five Guys.

**ANSWER:**   Five Guys admits the allegations of Paragraph 154 as to Five Guys but lacks knowledge or information sufficient to form a belief about the remaining allegations of Paragraph 154 concerning the other defendants.

155.    Through access to Buzzsaw and other means, including email and other file sharing protocalls [sic] Five Guys, Styer, and DXU shared among themselves the Construction Documents prepared by Soos and containing the Soos copyrighted material.

**ANSWER:**   Five Guys admits that certain materials prepared by Plaintiff were available on Buzzsaw and thus available to parties with access to Buzzsaw, including Styer and DXU, with the express knowledge and permission of Plaintiff, but denies the remaining allegations of Paragraph 155.

156.    Pursuant to 17 U.S.C. §106, Soos has the exclusive rights to copy, distribute and make derivative works from its copyrighted works.

**ANSWER:**   Five Guys admits that 17 U.S.C. § 106 sets forth the exclusive rights available to the owner of a valid copyright but denies the remaining allegations of Paragraph 156.

157.    In direct contravention of Soos' exclusive rights under the Copyright Act, Defendants copied and distributed the Soos' copyrighted works to various third-party architects and others or created derivative works based on Soos' copyrighted works and thereby infringed Soos' copyrights. Specifically, each of the Defendants infringed the copyrights of Soos by one or more of the following acts:

a.    Styer and DXU provided copies of the Soos Construction Documents to Five Guys in a format and in a manner outside of the limited license held by Five Guys to use for site specific projects;

b.    Five Guys provided copies of the Soos Construction Documents to Styer and DXU in a format and in a manner outside of Five Guys limited license to use the works for site specific projects;

c.    Five Guys provided or gave access to copies of Soos Construction Documents to third party architects working on Five Guys projects not depicted in the Soos Construction Documents and directed the creation of derivative works among other infringing uses of the Soos copyrighted works;

d.    Styer and DXU provided or gave access to copies of Soos Construction Documents to third party architects working on Five Guys projects not depicted in the Soos Construction Documents and directed the creation of derivative works among other infringing uses of the Soos copyrighted works;

e.    Styer and DXU used copyrighted materials from the Soos Construction Documents to create derivative works for the benefit of Five Guys.

**ANSWER:** Five Guys denies the allegations of Paragraph 157 as to Five Guys but lacks knowledge or information sufficient to form a belief about the remaining allegations of Paragraph 157 concerning the other defendants.

158. On information and belief, in performing the acts described in paragraph 157 above, each of the Defendants acted with the knowledge and cooperation of the other defendants when making the copies of the Soos Construction Documents available to third party architects and soliciting the creation of derivative works.

**ANSWER:** Five Guys denies the allegations of Paragraph 158.

159. In violating the Soos copyrights in the manner described in paragraph 157 above, each of the Defendants is jointly and severally liable for each of the infringements.

**ANSWER:** Five Guys denies the allegations of Paragraph 159.

160. As a direct and proximate result of Defendants' infringement of Soos' copyrights, Soos has suffered and continues to suffer substantial damages.

**ANSWER:** Five Guys denies the allegations of Paragraph 160.

161. Because Defendants willfully engaged in the acts complained of with a conscious disregard of Soos' rights, Soos is entitled to a finding that such infringements were willful. For those infringements for which statutory damages are available, and Soos elects to receive statutory damages, Soos is entitled to receive the maximum statutory damages allowable.

**ANSWER:** Five Guys denies the allegations of Paragraph 161.

## COUNT II

### Contributory Copyright Infringement

162.    Soos reincorporates the allegations from paragraphs 1 through 161 above.

**ANSWER:**  Five Guys reincorporates by reference its responses to Paragraphs 1 through 161 above, as if fully set forth herein.

163.    On information and believe, each of the Defendants distributed or otherwise provided access to Soos' copyrighted work to one or more third-party architects and encouraged them to copy, further distribute and make derivative works from Soos' copyright work in violation of Soos' exclusive rights under 17 U.S.C. §106. For example, the protectable expression from the Soos' copyrighted works which is included by third party architects in the Construction Documents they prepared for Five Guys is an infringement of the Soos copyrights.

**ANSWER:**  Five Guys denies the allegations of Paragraph 163 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

164.    Each of the Defendants knew that by making and distributing copies of, or otherwise providing access to, Soos' copyrighted works to third-party architects that the Soos works would be copied and used to create derivative works.

**ANSWER:**  Five Guys denies the allegations of Paragraph 164 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

165.    Five Guys benefitted from receiving the Construction Documents prepared by third-party architects that include infringing uses of the Soos copyrighted works.

**ANSWER:**   Five Guys admits that it benefits from construction drawings prepared for it by third-party architects but denies the remaining allegations of Paragraph 165.

166.    Styer and DXU each have benefited from the use of Soos copyrighted works in the Construction Documents created by third party architects for Five Guys.

**ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 166.

167.    On information and belief, in encouraging the third-party architects to make infringing use of the copyrighted materials in the Soos Construction Documents, each of the Defendants acted with the knowledge and cooperation of the other Defendants by, among other things, making the copies of the Soos Construction Documents available to third party architects and soliciting the creation of derivative works.

**ANSWER:**   Five Guys denies the allegations of Paragraph 167 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

168.    By causing third parties to engage in the behavior set forth above, Five Guys, Styer, and DXU have each contributorily infringed Soos copyrights.

**ANSWER:**   Five Guys denies the allegations of Paragraph 168 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

169.    Each of the Defendants is jointly and severally liable for the contributory infringements of the third party architects who infringed the copyrights in the Soos Construction Documents by making derivative works for Five Guys.

**ANSWER:**   Five Guys denies the allegations of Paragraph 169 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

170.    Because Defendants willfully engaged in the acts complained of with a conscious disregard of Soos' rights, Soos is entitled to a finding that such infringements were willful. For those infringements for which statutory damages are available, and Soos elects to receive statutory damages, Soos is entitled to receive the maximum statutory damages allowable.

**ANSWER:**   Five Guys denies the allegations of Paragraph 170 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

## COUNT III

### Five Guys' Vicarious Liability

171.    Soos reincorporates the allegations from paragraphs 1 through 170 above.

**ANSWER:**   Five Guys reincorporates by reference its responses to Paragraphs 1 through 170 above, as if fully set forth herein.

172.    Five Guys selected and hired all of the third-party architects to whom it provided copies or access to the Soos copyrighted works.

**ANSWER:**   Five Guys admits that it hired some, but not all, of the third-party architects who were given access to Buzzsaw. Five Guys denies the remaining allegations of Paragraph 172.

173.    Five Guys retained control and the right to approve all works created by the third-party architects.

**ANSWER:** Five Guys admits it maintained overall supervisory authority over all Five Guys Operations construction projects and over many, but not all, Five Guys Enterprises construction projects. Five Guys denies the remaining allegations of Paragraph 173.

174.   Five Guys benefited from the infringing use of Soos copyrighted materials it provided to third-party architects.

**ANSWER:** Five Guys admits it benefited from the architectural services it contracted for and received from third-party architects in connection with Five Guys restaurant projects but denies any infringing use of Soos copyrighted materials, and otherwise denies the remaining allegations of Paragraph 174.

175.   Five Guys declined to exercise the control to stop or limit the use of Soos' copyrighted materials. As a direct result of Five Guys activities, Five Guys is vicariously liable for such infringements caused by the third-party architects.

**ANSWER:** Five Guys denies the allegations of Paragraph 175.

## COUNT IV

### Styer's Vicarious liability

176.   Soos reincorporates the allegations from paragraphs 1 through 175 above.

**ANSWER:** Five Guys reincorporates by reference its responses to Paragraphs 1 through 175 above, as if fully set forth herein.

177.   Styer selected and hired DXU employees and contractors who were provided copies or access to the Soos copyrighted works.

**ANSWER:** Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 177.

178.    Styer retained control and the right to approve all works created by DXU employees and contractors.

   **ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 178.

179.    Styer benefited from the infringing use of Soos copyrighted materials DXU provided to its employees and contractors.

   **ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 179.

180.    Styer declined to exercise the control to stop or limit the use of Soos' copyrighted materials. As a direct result of Styer's activities, Styer is vicariously liable for such infringements caused by DXU or any of its employees or clients.

   **ANSWER:**   Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 180.

## COUNT V

### Violation of the Digital Millennium Copyright Act for Removal of CMI

181.    Soos reincorporates the allegations from paragraphs 1 through 180.

   **ANSWER:**   Five Guys reincorporates by reference its responses to Paragraphs 1 through 180 above, as if fully set forth herein.

182.    All Soos Construction Documents obtained by Defendants contained CMI" including, among other things, the title and other information identifying the work as well as Soos' name and other information about Soos in the title block on every page intentionally.

**ANSWER:** Five Guys admits the allegations of Paragraph 182 with respect to Plaintiff's architectural plans associated with site-specific restaurant locations but denies the allegations with respect to Plaintiff's documents and plans prepared or uploaded to Buzzsaw in connection with Five Guys's corporate design standards project. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

183.     On information and belief, Defendants either removed this CMI from the Soos plans when it distributed them to third parties, knowingly deleted such information from copies of the Soos plans to which it allowed third-parties to have access or distributed the plans knowing the information had been deleted.

**ANSWER:** Five Guys denies the allegations of Paragraph 183 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

184.     The removal of the CMI and any subsequent distribution or use of the Soos copyrighted plans was done without Soos' authorization and in violation of 17 U.S.C. §1202(b).

**ANSWER:** Five Guys denies the allegations of Paragraph 184 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

185.     Defendants knew or had reasonable grounds to know that the removal of Soos' CMI would induce, facilitate, or conceal an infringement of one or more of Soos' rights.

**ANSWER:** Five Guys denies the allegations of Paragraph 185 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

186.     Pursuant to Section 17 U.S.C. §1203, Soos is entitled to the actual damages and additional profits obtained by Five Guys or statutory damages for each removal of "not less than $2,500 or more than $25,000 dollars."

**ANSWER:**   Five Guys denies the allegations of Paragraph 186.

## COUNT VI

### Violation of the Digital Millennium Copyright Act for Providing False CMI

187.     Soos reincorporates the allegations from paragraphs 1 through 186.

**ANSWER:**   Five Guys reincorporates by reference its responses to Paragraphs 1 through 186 above, as if fully set forth herein

188.     After removing or causing to be removed the CMI contained in Soos' Construction Drawings, Defendants added or caused to be added to the title block CMI claiming DXU's, Five Guy's or other third parties' ownership of the materials contained in the Construction Drawing.

**ANSWER:**   Five Guys denies the allegations of Paragraph 188 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

189.     Defendants' addition of the CMI was false.

**ANSWER:**   Five Guys denies the allegations of Paragraph 189 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

190.     Defendants know and intended that the provision of false CMI would induce, enable, facilitate, or conceal infringement of Soos' rights.

**ANSWER:** Five Guys denies the allegations of Paragraph 190 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

191.    By providing or importing false CMI Defendants violated 17 U.S.C. §1202(a).

**ANSWER:** Five Guys denies the allegations of Paragraph 191 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

192.    Pursuant to Section 17 U.S.C. §1203, Soos is entitled to the actual damages and additional profits obtained by Defendants or statutory damages each time Defendant provided false CMI of "not less than $2,500 or more than $25,000 dollars."

**ANSWER:** Five Guys denies the allegations of Paragraph 192 with respect to its own conduct. Five Guys lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other defendants.

## COUNT VII

### Breach of Contract Against Five Guys

193.    Soos reincorporates the allegations from paragraphs 1 through 153 [sic].

**ANSWER:** Five Guys reincorporates by reference its responses to Paragraphs 1 through 192 above, as if fully set forth herein.

194.    Each of the Construction Document agreements entered into by Five Guys with Soos expressly provided that Five Guys was granted a one-time license to use the materials provided by Soos on "this site specific project only."

**ANSWER:** Five Guys admits that the agreements between Five Guys and Soos for architectural services relating to site-specific restaurant location projects provided a license to utilize the instruments of service in connection with that specific project only. Five Guys denies the allegations of Paragraph 194 with respect to Plaintiff's documents and plans prepared or uploaded to Buzzsaw in connection with Five Guys's corporate design standards project.

195. By incorporating the Soos materials provided to Five Guys or causing third parties to use the materials provided to Five Guys for purposes beyond the specific project to which the Soos works related, Five Guys breached the express terms of the agreements.

**ANSWER:** Five Guys denies the allegations of Paragraph 195.

196. The Construction Document agreements also provided that upon breach of the agreements, the license provided by Soos "may be revoked."

**ANSWER:** Five Guys admits the allegations of Paragraph 196 with respect to Plaintiff's architectural plans associated with site-specific restaurant locations. Five Guys denies the allegations with respect to Plaintiff's documents and plans prepared or uploaded to Buzzsaw in connection with Five Guys's corporate design standards project.

197. Soos has revoked the licenses granted to Five Guys.

**ANSWER:** Five Guys admits that counsel for Soos informed counsel for Five Guys that Soos deemed the licenses granted in the site-specific agreements between Soos and Five Guys to be revoked. Five Guys denies the remaining allegations of Paragraph 197.

## PRAYERS FOR RELIEF

In response to each and every prayer for relief alleged in the Amended Complaint, Five Guys denies that Plaintiff is entitled to any of the requested relief and denies any further

allegations that may be contained in Plaintiff's prayers for relief. Five Guys further denies each and every allegation, matter, or thing, express or implied, contained in the Amended Complaint that is not expressly admitted in this Answer to Amended Complaint.

## AFFIRMATIVE DEFENSES

Pursuant to Fed. R. Civ. P. 8(c), Five Guys states the following affirmative defenses.

## FIRST AFFIRMATIVE DEFENSE

### License

1. Five Guys restates and reincorporates by reference its responses to Paragraphs 1 through 197 above, as well as its Paragraph titled "Prayers for Relief" above.

2. In addition to the architectural services Plaintiff provided to Five Guys in connection with site-specific restaurant location projects, Plaintiff also entered into an agreement with Five Guys to assist with Five Guys's corporate design standards.

3. In 2009, Five Guys retained Plaintiff to assist Five Guys in developing and maintaining a uniform set of standards, specifications, and other materials reflecting the trade dress and other standards for a FIVE GUYS brand restaurant (the "Corporate Design Standards").

4. The Corporate Design Standards would include a development manual with development guidelines, checklists, standard store layouts, manufacturer specification sheets, and the like.

5. The express purpose of the Corporate Design Standards project was to create a centralized set of materials that architects and other consultants could use when preparing

architectural drawings for a Five Guys restaurant, ensuring conformity to Five Guys's standards and trade dress.

6.      To facilitate that purpose, Plaintiff and Five Guys agreed that Plaintiff would create and manage, for a fee, a file-sharing platform to which the Corporate Design Standards would be uploaded.

7.      Exhibit 10 to Plaintiff's Amended Complaint is a copy of Plaintiff's proposal for the Corporate Design Standard project and management of a file-sharing platform.

8.      Plaintiff and Five Guys agreed that Plaintiff would provide Corporate Design Standards and file-sharing site services on the terms set forth in Exhibit 10.

9.      Under the terms of that agreement, Plaintiff and Five Guys selected Buzzsaw as the file-sharing platform and Plaintiff managed Buzzsaw for several years.

10.      For years, Plaintiff uploaded standards, specifications, drawings, and other documents to Buzzsaw as part of the Corporate Design Standards.

11.      Some of these materials may have also appeared in Plaintiff's own construction drawings for certain site-specific restaurant locations for which Plaintiff and Five Guys had separately contracted.

12.      Under the terms of the separate contract for the Corporate Design Standards project, from approximately 2009 to 2013, Plaintiff uploaded Corporate Design Standards documents to Buzzsaw with knowledge and approval of the fact that these Corporate Design Standards materials would be made available to third-party architects and consultants with access to the Buzzsaw platform.

13.      Pursuant to the terms of the Corporate Design Standards project contract, Plaintiff granted an express license or, in the alternative, an implied license to Five Guys and any third-

party architects or consultants granted access to Buzzsaw to use, copy, and make derivative works from the Corporate Design Standards materials uploaded by Plaintiff to Buzzsaw.

14.     By uploading documents to Buzzsaw as part of Plaintiff's services in connection with the Corporate Design Standards project reflected in Exhibit 10 to the Amended Complaint, Plaintiff granted an express license or, in the alternative, an implied license to Five Guys and any third-party architects or consultants granted access to Buzzsaw to use the Corporate Design Standards materials uploaded by Plaintiff to Buzzsaw in a manner consistent with the purpose and objectives of the project reflected in Exhibit 10 to the Amended Complaint.

15.     If any of the allegedly infringing plans include material that is similar or identical to material contained in Exhibits 5, 6, and 7 of the Amended Complaint (the allegedly infringed works), some or all of those similarities exist because (i) Plaintiff uploaded that material to Buzzsaw as part of the Corporate Design Standards project and, therefore, were subject to the express or implied license described above, or (ii) both the allegedly infringing plans and the allegedly infringed works were created from the same Corporate Design Standards project materials.

16.     The conduct described by Plaintiff as copyright infringement and/or breach of contract was explicitly or impliedly authorized by Plaintiff under the separate Corporate Design Standards agreement.

## SECOND AFFIRMATIVE DEFENSE

### Estoppel

17.     Five Guys restates and reincorporates by reference Paragraphs 1 through 16 above.

18.     Plaintiff contracted with Five Guys to help Five Guys develop its Corporate Design Standards and to manage Buzzsaw for the purpose of making the Corporate Design Standards available to Five Guys's consultants, including third-party architects.

19.     Plaintiff uploaded Corporate Design Standards documents to Buzzsaw and was therefore aware of the documents on Buzzsaw.

20.     As the party that created and managed Buzzsaw, Plaintiff was also aware of the site's purpose and function: to make the Corporate Design Standards available to third-party architects and other consultants.

21.     Five Guys transferred its Corporate Design Standards work to DXU in 2013.

22.     At that time, Plaintiff was well aware of all of the materials Plaintiff had uploaded to Buzzsaw.

23.     Plaintiff was aware, even after 2013, that the Corporate Design Standards maintained on Buzzsaw were still being used for the same purposes for which they were used while Plaintiff managed the site.

24.     Even after Five Guys transferred the Corporate Design project and management of Buzzsaw to DXU, Plaintiff continued to provide architectural services for site-specific individual restaurant location projects.

25.     Accordingly, Plaintiff, like other Five Guys architects, had access to Buzzsaw and was aware of the materials available on the site.

26.     By agreeing with Five Guys to help create the Corporate Design Standards and manage Buzzsaw, and by uploading Corporate Design Standards to Buzzsaw for years, Plaintiff intended and represented that Five Guys's third-party architects could copy and otherwise use the Corporate Design Standards when creating architectural drawings for Five Guys.

27.    Likewise, by uploading parts of construction documents to Buzzsaw as part of the Corporate Design Standards and making them available to third-party architects, Plaintiff intended and represented that Five Guys's third-party architects could use those materials for the purposes of the Corporate Design Standards project.

28.    Plaintiff intended that Five Guys would rely on these representations and understandings.

29.    Five Guys relied and acted on these representations and understandings in a number of ways, including by: (i) paying Plaintiff for its work on the Corporate Design Standards project and for its management of Buzzsaw; (ii) making the Corporate Design Standards available to others through Buzzsaw; and (iii) continuing to develop its Corporate Design Standards, based in part on the Corporate Design Standards work that Plaintiff had performed from 2009 through 2013.

30.    To the extent that Plaintiff had any rights in the materials it uploaded to Buzzsaw, it had knowledge of those rights when it first uploaded those materials.

31.    To the extent that Plaintiff retained any copyright ownership over materials uploaded to Buzzsaw, Five Guys was unaware of Plaintiff's claimed retention of copyright ownership.

32.    Five Guys was also unaware that Plaintiff would years later attempt to assert copyright ownership over the materials in the Corporate Design Standards.

33.    Five Guys's ability to ensure that FIVE GUYS restaurants conform to FIVE GUYS trade dress depends on its ability to use the Corporate Design Standards for their intended purpose.

34.     To the extent that Plaintiff in fact intended to retain any copyright ownership in the materials uploaded to Buzzsaw, that intention was not communicated to Five Guys. Five Guys was injured by Plaintiff's representations to the contrary insofar as Five Guys: (i) paid Plaintiff for its work on the Corporate Design Standards project and for its management of Buzzsaw; (ii) made the Corporate Design Standards available to others through Buzzsaw, thereby exposing Five Guys to potential copyright liability; and (iii) continued to develop its Corporate Design Standards, based in part on the Corporate Design Standards work that Plaintiff had performed from 2009 through 2013.

35.     Five Guys relied heavily on Plaintiff's representations, express and implied, that Five Guys, not Plaintiff, owned the Corporate Design Standards.

36.     Plaintiff is therefore estopped from asserting copyright infringement and related claims against Five Guys.

## THIRD AFFIRMATIVE DEFENSE

### Waiver

37.     Five Guys restates and reincorporates by reference Paragraphs 1 through 36 above.

38.     By its actions stated above, Plaintiff has relinquished its right to assert copyright ownership over materials uploaded to Buzzsaw and to bring this suit against Five Guys.

## FOURTH AFFIRMATIVE DEFENSE

### Statute of Limitations

39.     Five Guys restates and reincorporates by reference Paragraphs 1 through 38 above.

40.     Plaintiff filed its initial Complaint in this case on September 12, 2017.

41.     To the extent that Plaintiff's claims are based upon conduct taking place before September 12, 2014, they are barred by the Copyright Act's three-year statute of limitations.

42.     Plaintiff was aware, since 2009, that documents uploaded to Buzzsaw would be made available to third-party architects.

43.     Because Plaintiff managed Buzzsaw and uploaded documents to it, Plaintiff was aware that it had uploaded portions of its architectural drawings to Buzzsaw as reference materials. Plaintiff was aware of this in 2009, when it began performing services under the Corporate Design Standards project contract, and Plaintiff was aware of this in 2013, when Five Guys transferred management of the Buzzsaw platform away from Plaintiff.

44.     On information and belief, Eric Styer took architectural drawings and other materials belonging to Plaintiff when Styer's employment with Plaintiff was terminated. Styer subsequently formed his own architecture firm, DXU.

45.     As early as August 2013, Plaintiff knew about Styer's and Gonzales's alleged actions regarding taking Plaintiff's plans and uploading Plaintiff's documents to Buzzsaw.

46.     Plaintiff sent multiple cease and desist letters to Styer asserting, among other things, that Styer had improperly taken Plaintiff's work product and intellectual property, including letters dated August 27, 2013, March 20, 2014, and September 1, 2015.

47.     To the extent that DXU used Soos plans to create its plans for Five Guys, Plaintiff was aware, or should have been aware, that DXU had access to and was using Soos plans to create DXU plans no later than 2013.

48.     Likewise, Plaintiff knew, or should have known, about any documents it uploaded to Buzzsaw in 2013 at or around the time they were uploaded.

49.     Accordingly, Plaintiff was well aware of any potential copyright infringement claims it may have had against Styer, Gonzales, DXU, or Five Guys no later than August 2013.

50.     Plaintiff's copyright infringement claims are barred by the three-year statute of limitations.

Dated: May 11, 2018                    Respectfully submitted,


                                       */s/ Kandis M. Koustenis*
                                       Jerry William Boykin (*admitted pro hac vice*)
                                       Kandis M. Koustenis (*admitted pro hac vice*)
                                       Bret Marfut (*admitted pro hac vice*)
                                       **PROTORAE LAW PLLC**
                                       1921 Gallows Road, Suite 950
                                       Tysons, VA 22182
                                       (p) 703-749-8507
                                       (f) 703-942-6758
                                       jboykin@protoraelaw.com
                                       kkoustenis@protoraelaw.com
                                       bmarfut@protoraelaw.com

                                       Kenneth Ulrich
                                       **GOLDBERG KOHN**
                                       55 East Monroe Street
                                       Suite 3300
                                       Chicago, IL 60603
                                       (p) 312-201-4000
                                       (f) 312-332-2196
                                       kenneth.ulrich@goldbergkohn.com

                                       *Counsel for Defendants Five Guys Enterprises, LLC and Five Guys Operations, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2018, I electronically filed a true and correct copy of the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing (NEF) to all registered users of the Court's CM/ECF system who have filed notices of appearance in this matter.

*/s/ Kandis M. Koustenis*

00044486