# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SOOS & ASSOCIATES, INC., <br><br>*Plaintiff*, <br><br>-v- <br><br>FIVE GUYS ENTERPRISES, LLC, <br>FIVE GUYS OPERATIONS, LLC, DXU <br>ARCHITECTS and ERIC STYER, <br><br>*Defendants*. <br><br>FIVE GUYS ENTERPRISES, LLC, <br>FIVE GUYS OPERATIONS, LLC <br><br>*Third-Party Plaintiffs*, <br><br>-v- <br><br>DXU ARCHITECTS, <br><br>*Third-Party Defendant*. | Civil Action No. 1:17-cv-06577 <br><br> Honorable Joan H. Lefkow <br> Magistrate Judge Sidney I. Schenkier <br><br> **JURY TRIAL DEMANDED** |

## **FIVE GUYS'S AMENDED AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Pursuant to the Court's Scheduling Order (Dkt. 58) and the Court's Order modifying the date to amend pleadings (Dkt. 94), Defendants Five Guys Enterprises, LLC and Five Guys Operations, LLC (collectively, "Five Guys") amends its responsive pleading (Dkt. 55) to Plaintiff's Amended Complaint as follows:

1. Five Guys restates and incorporates by reference its responses to the Amended Complaint set forth in Five Guys's Answer to Amended Complaint (Dkt. 55).

# AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### Implied, Non-Exclusive License

2. In 2009, Five Guys entered into an agreement with Plaintiff to assist Five Guys in developing and maintaining a uniform set of standards, specifications, and other materials reflecting the trade dress and other standards for a FIVE GUYS brand restaurant (the "Corporate Design Standards" and the "Corporate Design Standards Agreement").

3. The primary purpose of the Corporate Design Standards Agreement was to create a centralized set of materials that Five Guys would provide to architects and other consultants for use in preparing architectural drawings for a Five Guys restaurant, ensuring conformity to Five Guys's standards and trade dress.

4. To facilitate that purpose, Plaintiff and Five Guys agreed that Plaintiff would create and manage, for a fee, a file-sharing platform to which the Corporate Design Standards would be uploaded and accessible to multiple third-party architects and consultants.

5. Exhibit 10 to Plaintiff's Amended Complaint is a copy of Plaintiff's proposal for the Corporate Design Standards project, which memorializes the Parties' Corporate Design Standards Agreement.

6. Under the terms of that agreement, Plaintiff and Five Guys selected Buzzsaw as the file-sharing platform and Plaintiff managed Buzzsaw from 2009 to late 2013.

7. Throughout those years, Plaintiff performed according to the Corporate Design Standards Agreement by, among other things, uploading standards, specifications, drawings, and other documents to Buzzsaw as part of the Corporate Design Standards.

8. As manager of the contents and access to the Buzzsaw platform, Plaintiff understood, agreed, and intended that third-party architects and other consultants would be given access to, and were permitted to utilize the Corporate Design Standards (including by reproducing, distributing, and creating derivative works) in preparing architectural drawings for Five Guys restaurant locations.

9. Pursuant to the Corporate Design Standards Agreement, Plaintiff granted an implied, non-exclusive license to Five Guys and any third-party architects or consultants granted access to Buzzsaw to distribute, reproduce, and create derivative works from the Corporate Design Standards on Five Guys's behalf.

10. Plaintiff's course of conduct from 2009 to 2013, including but not limited to Soos's uploading of documents to Buzzsaw, in performance of its Corporate Design Standards services gave rise to an implied, non-exclusive license to Five Guys and any third-party architects or consultants granted access to Buzzsaw to utilize the Corporate Design Standards (including by reproducing, distributing, and creating derivative works) in preparing architectural drawings for Five Guys restaurant locations.

11. As one in the stable of architects hired by Five Guys to prepare architectural drawings for site-specific, individual restaurant locations, Plaintiff similarly utilized the Corporate Design Standards in preparing architectural drawings for individual Five Guys restaurant locations, including Exhibits 5, 6, and 7 of the Amended Complaint (the "Registered Works").

12. If any of the allegedly infringing plans include material that is similar or identical to material contained in the Registered Works, some or all of those similarities exist because the

allegedly infringing plans and the Registered Works were created from Five Guys's Corporate Design Standards materials.

13. The conduct described by Plaintiff as copyright infringement and/or breach of contract was authorized by the implied, non-exclusive license granted to Five Guys by Plaintiff.

## SECOND AFFIRMATIVE DEFENSE

### Estoppel/Waiver/Acquiescence

14. Five Guys restates and incorporates by reference Paragraphs 1 through 13 above.

15. Plaintiff contracted with Five Guys to help Five Guys develop its Corporate Design Standards and to manage Buzzsaw for the purpose of making the Corporate Design Standards available to Five Guys's consultants, including third-party architects.

16. Plaintiff uploaded Corporate Design Standards material to Buzzsaw and was at all times aware of the materials maintained in the Buzzsaw platform.

17. As the party that created and managed Buzzsaw, Plaintiff knew of the site's purpose and function: to make the Corporate Design Standards available to third-party architects and other consultants.

18. When Five Guys transferred its Corporate Design Standards work to DXU in 2013, Plaintiff was well aware of all of the materials it had uploaded to Buzzsaw and of how those materials had been used and accessed over the years.

19. Plaintiff was aware, even after 2013, that the Corporate Design Standards maintained on Buzzsaw were still being used for the same purposes for which they were used while Plaintiff managed the site.

20. Even after Five Guys transferred the Corporate Design project and management of Buzzsaw to DXU, Plaintiff continued to provide architectural services for site-specific individual restaurant location projects.

21. Accordingly, like other Five Guys architects, Plaintiff had access to Buzzsaw and knew of the materials available on the site.

22. By agreeing with Five Guys to help create the Corporate Design Standards and manage Buzzsaw, and by uploading Corporate Design Standards material to Buzzsaw for years, Plaintiff intended and represented that Five Guys's third-party architects were permitted to reproduce, distribute, or create derivative works from the Corporate Design Standards in preparing architectural drawings for Five Guys.

23. Five Guys relied and acted on these representations and understandings in a number of ways, including by: (i) paying Plaintiff for its work on the Corporate Design Standards project and for its management of Buzzsaw; (ii) making the Corporate Design Standards available to others through Buzzsaw; and (iii) continuing to develop its Corporate Design Standards, based in part on the Corporate Design Standards work that Plaintiff had performed from 2009 through 2013.

24. Five Guys's ability to ensure that FIVE GUYS restaurants conform to FIVE GUYS trade dress depends on its ability to use the Corporate Design Standards for their intended purpose. Five Guys relied heavily on Plaintiff's representations and conduct that Five Guys (as well as its authorized third-party architects and other consultants) was granted a non-exclusive license to use the Corporate Design Standards materials.

25. Based on the foregoing, to the extent Soos actually believed that Five Guys's use of the Corporate Design Standards was improper, Soos has inexcusably delayed in taking action and Five Guys will be prejudiced if Soos is inequitably permitted to assert its rights at this time.

26. The doctrines of waiver, estoppel, and acquiescence bar Plaintiff from now objecting to Five Guys's use of the Corporate Design Standards material and asserting copyright infringement and related claims against Five Guys.

### THIRD AFFIRMATIVE DEFENSE
### Statute of Limitations

27. Five Guys restates and incorporates by reference Paragraphs 1 through 26 above.

28. Plaintiff filed its initial Complaint in this case on September 12, 2017.

29. To the extent that Plaintiff's claims are based upon conduct taking place before September 12, 2014, they are barred by the Copyright Act's three-year statute of limitations.

30. Because Plaintiff managed the Buzzsaw platform, including uploading materials, Plaintiff knew that materials uploaded to Buzzsaw would be made available to third-party architects.

31. Plaintiff was aware of this in 2009, when it began performing services under the Corporate Design Standards Agreement, and Plaintiff was aware of this in 2013, when Five Guys transferred management of the Buzzsaw platform away from Plaintiff.

32. As early as August 2013, Plaintiff knew about Styer's and Gonzales's alleged actions regarding taking Plaintiff's plans and uploading Plaintiff's documents to Buzzsaw.

33. Plaintiff sent multiple cease and desist letters to Styer asserting, among other things, that Styer had improperly taken Plaintiff's work product and intellectual property, including letters dated August 27, 2013, March 20, 2014, and September 1, 2015.

34. Likewise, as early as August 2013, Plaintiff knew, or should have known, about the materials it had uploaded to Buzzsaw in carrying out the Corporate Design Standards Agreement from 2009–2013.

35. Accordingly, Plaintiff was well aware of any potential copyright infringement claims it may have had against Styer, Gonzales, DXU, or Five Guys no later than August 2013.

## FOURTH AFFIRMATIVE DEFENSE

### Copyright Misuse

36. Five Guys restates and incorporates by reference Paragraphs 1 through 35 above.

37. In support of its copyright infringement claims, Plaintiff misrepresents the nature and the origin of the Corporate Design Standards materials found in both Plaintiff's alleged copyrights (including the Registered Works) and allegedly infringing third-party architect drawings.

38. Plaintiff alleges that any similarities between the Registered Works and allegedly infringing third-party architect plans are evidence of copyright infringement when Plaintiff is aware that, if any of the allegedly infringing plans include material that is similar or identical to material contained in the Registered Works, some or all of those similarities exist because the allegedly infringing plans and the Registered Works were created from the same Corporate Design Standards materials.

39. Plaintiff is misusing its copyrights in the Registered Works to stop Five Guys from using the Corporate Design Standards materials, when Plaintiff has previously granted (and been paid for) an implied, non-exclusive license to Five Guys and any third-party architects or consultants for Five Guys to distribute, reproduce, and create derivative works from the Corporate Design Standards.

40. Plaintiff is misusing its copyrights in the Registered Works and this copyright infringement suit to "punish" Five Guys for hiring Plaintiff's former employee, Eric Styer, and his architectural firm DXU Architects in late 2013, and to extort additional funds for the implied, non-exclusive license Five Guys has already bought and paid for.

41. Plaintiff is thus using its alleged copyrights (including the Registered Works) in a manner violative of the public policy embodied in the statutory grant of copyright and copyright law.

## COUNTERCLAIMS

Five Guys alleges as follows for its Counterclaims against Plaintiff Soos & Associates, Inc.:

## THE PARTIES

1. Five Guys Enterprises, LLC is a Delaware limited liability company with its principal place of business in Lorton, Virginia.

2. Five Guys Operations, LLC is a Delaware limited liability company with its principal place of business in Lorton, Virginia.

3. Soos & Associates, Inc. ("Soos" or "Plaintiff") is an Illinois corporation organized under the laws of the state of Illinois with its principal place of business in Lincolnshire, Illinois.

## JURISDICTION AND VENUE

4. Counts I and II of Five Guys's Counterclaims arise under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.*, with a specific remedy sought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, because an actual, substantial and continuing justiciable controversy exists between Five Guys and Soos.

5. This Court has original jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court may exercise supplemental jurisdiction over the subject matter of Count III of Five Guys's Counterclaims for breach of contract pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Soos because it regularly conducts business in this judicial district and has availed itself of the Court in this judicial district by bringing the Amended Complaint in this action.

8. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) and (2), as well as 1400(a).

## STATEMENT OF FACTS

9. Soos wore two "hats" during its business relationship with Five Guys. During the same time period from approximately 2009 to late 2013, Soos performed two separate and different types of architectural services for Five Guys: (1) preparing architectural plans for individual, site-specific Five Guys restaurant locations, and (2) creating, updating, and managing the distribution of Five Guys's Corporate Design Standards.

**The Corporate Design Standards and the Corporate Design Standards Agreement**

10. In 2009, Five Guys entered into an agreement with Plaintiff to assist Five Guys in developing and maintaining a uniform set of standards, specifications, and other materials reflecting the trade dress and other standards for a FIVE GUYS brand restaurant (the "Corporate Design Standards" and the "Corporate Design Standards Agreement").

11. The primary purpose of the Corporate Design Standards Agreement was to create a centralized set of materials that Five Guys would provide to architects and other consultants for

in preparing architectural drawings for a Five Guys restaurant, ensuring conformity to Five Guys's standards and trade dress.

12. To facilitate that purpose, Plaintiff and Five Guys agreed that Plaintiff would manage, for a fee, a file-sharing platform to which the Corporate Design Standards would be uploaded.

13. Exhibit 10 to Plaintiff's Amended Complaint is a copy of Plaintiff's proposal for the Corporate Design Standards project, which memorializes the Parties' Corporate Design Standards Agreement.

14. Pursuant to the Corporate Design Standards Agreement, Plaintiff granted an implied, non-exclusive license to Five Guys and any third-party architects or consultants granted access to Buzzsaw to distribute, reproduce, and create derivative works from the Corporate Design Standards on Five Guys's behalf.

15. Under the terms of that agreement, Plaintiff and Five Guys selected Buzzsaw as the file-sharing platform and Plaintiff managed Buzzsaw from 2009 to late 2013.

**The Parties Five-Year Course of Performance**

16. Throughout those years, Plaintiff and Five Guys performed according to the Corporate Design Standards Agreement.

17. From 2009 to 2013, Soos helped Five Guys develop its Corporate Design Standards materials. Soos also uploaded the Corporate Design Standards materials to Buzzsaw and otherwise facilitated their access and distribution to third-party architects and other consultants.

18. Soos provided Five Guys with quarterly update reports describing changes made to the Corporate Design Standards materials.

19. The Corporate Design Standards materials included things like specification sheets for equipment to be used in FIVE GUYS brand restaurants, schedules, and standard layouts.

20. For example, the Corporate Design Standards include drawings depicting the components of a FIVE GUYS brand restaurant; drawings showing kitchen layouts, bathroom layouts, counter heights, sign details, and the like.

21. These drawings, called "blocks," were uploaded as CAD drawing files to Buzzsaw so that any architect hired by Five Guys to develop plans for a site-specific restaurant location could implement them into his plans for that site.

22. Since Soos oversaw the development and updating of the Corporate Design Standards, it knew the substance of those standards. Likewise, Soos knew what materials were available on Buzzsaw because Soos managed the Buzzsaw platform, and because Soos (like Five Guys's other architects) had access to Buzzsaw when creating plans for specific restaurant locations.

23. As manager of the Buzzsaw platform, Plaintiff understood, agreed, and intended that third-party architects and other consultants would be given access to, and were permitted to utilize the Corporate Design Standards (including by reproducing, distributing, and creating derivative works) in preparing architectural drawings for Five Guys restaurant locations.

24. Plaintiff's course of conduct from 2009 to 2013, including Soos's uploading of documents to Buzzsaw as part of its Corporate Design Standards services for Five Guys gave rise to an implied, non-exclusive license to Five Guys and any third-party architects or consultants granted access to Buzzsaw to utilize the Corporate Design Standards (including by

reproducing, distributing, and creating derivative works) in preparing architectural drawings for Five Guys restaurant locations.

### The Site-Specific Restaurant Location Services

25. As one in the stable of architects hired by Five Guys to prepare architectural drawings for site-specific, individual restaurant locations, Plaintiff similarly utilized the Corporate Design Standards in preparing architectural drawings for individual Five Guys restaurant locations, including Exhibits 5, 6, and 7 of the Amended Complaint (the "Registered Works").

26. For each specific FIVE GUYS brand restaurant location for which Plaintiff was hired to prepare architectural plans, Five Guys and Soos executed form agreements for architectural services, which, among other things, granted Five Guys a one-time license to use the plans for that specific site. Exhibit 4 to Soos's Amended Complaint is an example of a contract for a specific restaurant location.

27. The contracts for the site-specific restaurant location services are separate from and irrelevant to the covenants and obligations of the Corporate Design Standards Agreement.

### Five Guys Moves On. Soos Does Not.

28. During Five Guys's business relationship with Soos, Eric Styer was a Soos employee and Five Guys's primary point of contact with Soos. During that time, Styer gained significant institutional knowledge and Five Guys was comfortable with him.

29. So, when Styer left Soos and formed his own architecture firm, DXU Architects, Five Guys decided to move its Corporate Design Standards work away from Soos to DXU.

30. Frustrated that Five Guys had moved its Corporate Design Standards work to a competing architect, Soos decided to use its copyrights in site-specific plans to punish Five Guys

for hiring Styer and DXU and extort additional money from Five Guys for the Corporate Design Standards it had already bought and paid for.

33. Soos knew that any plans created for Five Guys based upon the Corporate Design Standards would have similarities with Soos's plans because both the Soos plans and the third-party plans would necessarily include materials that came from the Corporate Design Standards.

32. For example, each of Soos's copyrighted plans contains a block titled "OPEN SIGN DETAIL" that shows the proper placement of the restaurant's "open" sign. Here are those blocks as they appear in the three Registered Works, which were highlighted by Soos's counsel to designate those portions of the drawings which Soos alleges Five Guys to have infringed:



33. But the "OPEN SIGN DETAIL" block appeared in the Development Manual as part of the Corporate Design Standards materials since at least as early as 2010. Here is the block as it appeared in section 2.2 of the 2010 Development Manual prepared by Soos:

13



34. Just like the "OPEN SIGN DETAIL" block, most (if not all) of the blocks, schedules, and other materials that appear in Soos's works and third-party works come from the Corporate Design Standards materials, including the Development Manual.

## COUNT I

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT - LICENSE)

35. Five Guys restates and incorporates by reference the allegations in Paragraphs 1 through 34 above.

36. Plaintiff alleges that any similarities between the Registered Works and allegedly infringing third-party architect plans are evidence of copyright infringement, even though Plaintiff is aware that, if any of the allegedly infringing plans include material that is similar or identical to material contained in the Registered Works, some or all of those similarities exist because the allegedly infringing plans and the Registered Works were created from the same

Corporate Design Standards materials for which Soos granted to Five Guys an implied, non-exclusive license.

37. The conduct described by Plaintiff as copyright infringement was authorized by the implied, non-exclusive license granted by Plaintiff to Five Guys under the Corporate Design Standards Agreement and/or the course of conduct between the parties from 2009 to 2013.

38. An actual, current dispute between the parties exists to warrant the issuance of a declaratory judgment.

39. Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the Registered Works, the Corporate Design Standards, and the implied, non-exclusive license is necessary and appropriate under the circumstances.

WHEREFORE, Five Guys respectfully requests that the Court: (i) issue a judicial declaration that Five Guys has not and does not infringe the copyrighted works alleged by Soos in its Amended Complaint because Soos granted to Five Guys an implied, non-exclusive license to the Corporate Design Standards; (ii) award Five Guys its costs, expenses, and reasonable attorneys' fees as provided by law; and (iii) award such other and further relief as the Court deems just and proper.

## COUNT II
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT – COPYRIGHT MISUSE)

40. Five Guys restates and incorporates by reference the allegations in Paragraphs 1 through 39 above.

41. Plaintiff is using its alleged copyrights (including the Registered Works) in a manner contrary to the public policy embodied in the statutory grant of copyright and copyright law.

42. Plaintiff is misusing its copyrights in the Registered Works to stop Five Guys from using the Corporate Design Standards materials, when Plaintiff has previously granted (and been paid for) an implied, non-exclusive license to Five Guys and any third-party architects or consultants for Five Guys to distribute, reproduce, and create derivative works from the Corporate Design Standards.

43. Plaintiff is misusing its copyrights in the Registered Works and this copyright infringement suit to "punish" Five Guys for hiring Plaintiff's former employee, Eric Styer, and his architectural firm DXU Architects in late 2013, and to extort additional funds for the implied, non-exclusive license Five Guys has already bought and paid for.

44. An actual, current dispute between the parties exists to warrant the issuance of a declaratory judgment.

45. Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the Registered Works, the Corporate Design Standards, and the implied, non-exclusive license is necessary and appropriate under the circumstances.

WHEREFORE, Five Guys respectfully requests that the Court: (i) issue a judicial declaration that Five Guys has not and does not infringe the copyrighted works alleged by Soos in its Amended Complaint because Soos has engaged and is engaging in copyright misuse; (ii) award Five Guys its costs, expenses, and reasonable attorneys' fees as provided by law; and (iii) award such other and further relief as the Court deems just and proper.

## COUNT III

## (BREACH OF CONTRACT)

46. Five Guys restates and incorporates by reference the allegations in Paragraphs 1 through 45 above.

47. The Corporate Design Standards Agreement is a valid and enforceable contract between Five Guys and Soos.

48. At all times relevant to this action, Five Guys has substantially performed all conditions, covenants, and promises required of Five Guys under the Corporate Design Standards Agreement, except for any terms and conditions the performance of which were excused, prevented, hindered, or frustrated by Soos.

49. Pursuant to the Corporate Design Standards Agreement, Soos granted an implied, non-exclusive license to Five Guys (and its third-party architects or consultants) to distribute, reproduce, and create derivative works from the Corporate Design Standards.

50. Soos has breached the Corporate Design Standards Agreement, including the implied covenant of good faith and fair dealing, by improperly revoking and/or repudiating the license.

51. Soos's breach has caused and is causing Five Guys to suffer damages in an amount to be determined at trial.

WHEREFORE, Five Guys respectfully requests that the Court: (i) enter an order finding Soos breached the Corporate Design Standards Agreement by improperly revoking or repudiating the implied, non-exclusive license granted by Soos to Five Guys under the Corporate Design Standards Agreement; (ii) award Five Guys all damages arising out of Soos's breach; and (iii) award such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Five Guys respectfully demands a jury trial on all issues that are triable by a jury.

Dated: November 8, 2018          Respectfully submitted,

/s/ *Kandis M. Koustenis*
Jerry William Boykin (*admitted pro hac vice*)
Kandis M. Koustenis (*admitted pro hac vice*)
Bret Marfut (*admitted pro hac vice*)
**PROTORAE LAW PLLC**
1921 Gallows Road, Suite 950
Tysons, VA 22182
(p) 703-749-8507; (f) 703-942-6758
jboykin@protoraelaw.com
kkoustenis@protoraelaw.com
bmarfut@protoraelaw.com

Kenneth Ulrich
Robert Leighton
**GOLDBERG KOHN**
55 East Monroe Street, Suite 3300
Chicago, IL 60603
(p) 312-201-4000
(f) 312-332-2196
kenneth.ulrich@goldbergkohn.com
robert.leighton@goldbergkohn.com

*Counsel for Defendants Five Guys Enterprises, LLC and Five Guys Operations, LLC*

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 8, 2018, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing (NEF) to all registered users of the Court's CM/ECF system who have filed notices of appearance in this matter.

                */s/ Kandis M. Koustenis*