# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SOOS & ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> FIVE GUYS ENTERPRISES, LLC, FIVE GUY OPERATIONS, LLC, DXU ARCHITECTS AND ERIC STYER, <br><br> Defendants. | No. 17 C 06577 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff Soos & Associates, Inc.'s ("Soos") motion to dismiss Defendant Five Guys Enterprises, LLC's ("Five Guys") affirmative defenses and counterclaims. (Dkt. 101) For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

At the motion to dismiss stage, the Court accepts all well-pleaded factual allegations in the counterclaims as true and draws all inferences in Five Guys' favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). Starting in 2008, Five Guys hired Soos "for architectural consulting services for multiple burger and fries restaurants in the Chicago/Milwaukee area." (Dkt. 102 at 5) At some point in 2009, Five Guys and Soos agreed that Soos would "develop, maintain, and help distribute" Five Guys' "Corporate Design Standards." (Dkt. 103 at 2) The idea, according to Five Guys, "was to have a centralized set of materials reflecting the [Five

Guys] brand's trade dress and specifications that architects designing [Five Guys] restaurants could access and implement into their plans. That way, Five Guys could ensure that the stores designed by its various architects looked consistent." (*Id*.) (internal citations omitted) To facilitate the distribution of the Corporate Design Standards, Soos agreed to manage a file-sharing platform that architects could use to access and download the standards. (*Id*.)

Five Guys claims that "Soos did what it agreed to do." (Dkt. 103 at 2) Soos selected Buzzsaw as the file-sharing platform and uploaded the Corporate Design Standards materials to Buzzsaw. (*Id*.) Five Guys paid Soos for this service. (*Id*.) For several years, Five Guys' architects implemented the Corporate Design Standards into their plans, "just as Five Guys and Soos had intended." (*Id*.) Five Guys alleges that Soos knew the Corporate Design Standards materials were distributed to other architects and that other architects were implementing the Corporate Design Standards into their plans (*Id*. at 3)

While performing the Corporate Design Standards work, Soos also worked as one of Five Guys' architects that created architectural plans ("Construction Documents") for specific restaurant locations. (Dkt. 103 at 3) According to Five Guys, the work for site-specific locations was distinct from the Corporate Design Standards work. (*Id*). Soos completed Construction Documents for 95 projects, and each location was subject to a separate form agreement (the "Construction Agreements"). (Dkt. 102 at 5) Five Guys further alleges that Soos had access to the Corporate Design Standards materials on Buzzsaw, just like any other Five Guys architect. (Dkt. 95, ¶ 21)

Five Guys claims that the plans created during Soos' and Five Guys' relationship have similar elements because both Soos' plans and the other architects' plans contain material from the Corporate Design Standards.[1] (Dkt. 103 at 3) Eventually, Five Guys moved its Corporate Design Standards work to a competitor of Soos, DXU. (Dkt. 95, Countercl. ¶ 29) DXU was created by a former Soos employee, Eric Styer. (*Id.* at ¶ 28) Five guys claims that "Soos decided to use the similarities between its plans and other architects' plans to bring this lawsuit to punish Five Guys for its decision to replace Soos." (Dkt. 103 at 3)

Plaintiff brought this action "for the literal or near literal copying of three of Soos' architectural plans." (Dkt. 102 at 3) Soos alleges that Five Guys essentially copied Soos' copyrighted pictures, diagrams, schedules, charts, notes, texts, illustrations and "pasted" them into architectural plans for other restaurant locations. (*Id.*) Importantly, Soos alleges that Five Guys directly copied Soos' work from its Construction Documents and not from the Corporate Design Standards. (*Id.*) Five Guys responded with several affirmative defenses and counterclaims. (Dkt. 95) Soos now seeks to dismiss those affirmative defenses and counterclaims. (Dkt. 101)

---

[1] Soos contests this factual assertion in its motion to dismiss, claiming instead that Five Guys directly lifted certain elements from the Construction Documents and not from the Corporate Design Standards. (Dkt. 102 at 8) As an example, Soos points to the Open Sign Detail in one of Soos' Construction Documents that also appears in Five Guys' later architectural drawings. (*Id.* at 6) Five Guys alleged that this Open Sign Detail was created as a standard in 2010. (*Id.*) Soos counters that the Open Sign Detail was not part of the design standards created in 2010, and that it appeared in Five Guys' Construction Documents as early as the spring of 2009. (*Id.*) In addition to the Open Sign Detail, Soos cites to many other exhibits to demonstrate that its factual assertions are correct, and that Five Guys must have lifted material from Soos' Construction Documents. (*Id.* at 8)

3

## **LEGAL STANDARD**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted); s*ee also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp.,* 763 F.3d at 700.

A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007); s*ee also Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because they "potentially serve

only to delay," and so affirmative defenses "will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). To survive a motion to strike, an affirmative defense must be adequately pleaded and withstand a Rule 12(b)(6) challenge. *See Maui Jim, Inc. v. SmartBuy Guru Enters.,* 386 F. Supp. 3d 926, 937 (N.D. Ill. 2019) (citations omitted). The *Twombly* and *Iqbal* pleading standard applies to affirmative defenses.[2] *Id.* "As a practical matter, however, affirmative defenses rarely will be as detailed as a complaint (or a counterclaim); nor do they need to be in most cases to provide sufficient notice of the defense asserted. But a problem arises when a party asserts boilerplate defenses as mere placeholders without any apparent factual basis." *Behn v. Kiewit Infrastructure Co.*, 2018 WL 5776293, at *1 (N.D. Ill. Nov. 2, 2018) (citing *Dorsey v. Ghosh*, 2015 WL 3524911, at *4 (N.D. Ill. June 3, 2015)).

## **DISCUSSION**

Soos moves to strike all affirmative defenses under Federal Rule of Civil Procedure Rule 12(f), and to dismiss all counterclaims under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 101) The affirmative defenses include: 1) an implied, non-

---

[2] Five Guys claims there is a dispute in this district regarding whether the *Twombly* and *Iqbal* pleading standard applies to affirmative defenses. (Dkt. 103, footnote 5) The Seventh Circuit has yet to decide whether affirmative defenses must meet the heighten *Twombly* and *Iqbal* standard. Courts have diverged on the question. *Compare Sarkis' Cafe*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. July 3, 2014) (siding with the "majority view" that *Twombly* and *Iqbal* should apply to affirmative defenses) *with LaPorte v. Bureau Veritas N. Am. Inc.*, 2013 WL 250657, at *1 (N.D. Ill. Jan. 18, 2013) (declining to "extend the pleading requirements of *Twombly* and *Iqbal* to affirmative defenses" until the Seventh Circuit or Supreme Court concludes otherwise). We, too, side with the majority view and conclude that an affirmative defense must contain "sufficient factual matter to be plausible on its face." *Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 386 (N.D. Ill. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

5

exclusive license; 2) estoppel, waiver, acquiescence; 3) statute of limitations; and 4) copyright misuse. (Dkt. 95) The counterclaims include: 1) declaratory judgment of non-infringement based on an implied, non-exclusive license; 2) declaratory judgment of non-infringement based on copyright misuse; and 3) breach of contract. (Dkt. 95) The Court will address each in turn.

**<u>First Affirmative Defense (implied, non-exclusive license)</u>**

Soos argues that Five Guys has failed to plead an implied, non-exclusive license to the Corporate Design Standards material. (Dkt. 102 at 12-13) In particular, Soos argues that its repeated warnings against reuse trump any implied license defense and that Five Guys has failed to plead the scope of its license. (*Id.*)

"An accused infringer can avoid liability for copyright infringement if he or she can prove the existence of an implied non-exclusive license to make use of the copyrighted material." *Kay Bros. Enters. v. Parente*, 2018 U.S. Dist. LEXIS 128191, at *22 (N.D. Ill. July 31, 2018) (citing *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016)). An implied non-exclusive license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute this work." *I.A.E. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996) (citing *Effects Assocs. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990)).

Five Guys adequately pleaded the elements of this defense. Five Guys alleges that it requested and paid for the creation of the Corporate Design Standards; that

6

Soos delivered the Corporate Design Standards to Five Guys and Five Guys' architects when it uploaded the materials to Buzzsaw; and that Soos intended for Five Guys and its architects to view, download, copy, and create derivative works from the Corporate Design Standards. (Dkt. 95, Aff. Def. ¶ 6-8) The Court disagrees with Soos' argument that Five Guys failed to plead the scope of its license. Five Guys alleges that the license covered the Corporate Design Standards and gave Five Guys and its other architects the right to "distribute, reproduce, and create derivative works from" the Corporate Design Standards. (*Id.* at ¶ 9-10) These allegations are sufficient to survive a motion to strike.

Soos additionally invites the Court to adjudicate the merits of Five Guys' defense by claiming that its "2000-plus warnings against reuse trump any implied license" claim. (Dkt. 102 at 13) Five Guys responds to Soos' argument by claiming that Soos' "warnings" applied only to the Construction Documents, and not the Corporate Design Standards. (Dkt. 103 at 7-8) A motion to dismiss tests the sufficiency of the allegations, not the merits of the case. Whether Soos' repeated warnings stamped on every image of its Construction Documents voids any implied non-exclusive license defense regarding the Corporate Design Standards is a merits-based question not yet ripe for decision.[3] The Court cannot reach the merits of the question of whether Five

---

[3] Many of Soos' arguments in its motion to dismiss involve factual questions and disputes. Soos disagrees with Five Guys' characterization of crucial facts such as whether Five Guys had an implied non-exclusive license to the Corporate Design Standards, whether any similarities in Five Guys' architectural plans came from the Corporate Design Standards or whether Five Guys copied and pasted from the Construction Documents, and whether Soos' repeated warnings against reuse apply to the Corporate Design Standards. The discussion of the Open Sign Detail, *supra* note 1, is an example of Soos' contesting Five Guys' factual allegations. As mentioned above, Five Guys cites to many exhibits to demonstrate that its factual

7

Guys or the other architects it hired infringed by copying portions of the Construction Documents. The Court declines to strike this affirmative defense.

**Second Affirmative Defense (estoppel/waiver/acquiescence)**

Five Guys' next affirmative defense is "estoppel/waiver/acquiescence." (Dkt. 95 at 4) Five Guys' acknowledges that "[t]hese are distinct doctrines, but Five Guys listed them together because they turn on the same general operative facts." (Dkt. 103 at 8)

In the context of copyright infringement, the defense of equitable estoppel applies "when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception…." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014); s*ee also Bourne Co. v. Hunter Country Club, Inc.,* 990 F.2d 934, 937 (7th Cir. 1993) ("[E]stoppel applies only if the copyright owner is aware of the infringing conduct yet acts in a way that induces the infringer reasonably to rely upon such action to his detriment."). The doctrine of waiver "acknowledges that a right may be 'taken away from its holder as a penalty for failure to assert it in a clear and timely manner.'" *Myers v. Harold*, 279 F. Supp. 3d 778, 779 (N.D. Ill. 2017) (citing *Goldman v. Gagnard,* 757 F.3d 575, 579 (7th Cir 2014)). And acquiescence is similar to the defense of laches. *Piper Aircraft Corp. v.*

---

allegations are correct, that any similarities in Five Guys' architectural plans came from Soos' Construction Drawings, and that Soos repeatedly warned against reuse. However, these are factual questions that are more appropriately resolved at a later stage.

8

*Wag-Aero, Inc.*, 741 F.2d 925, 933 (7th Cir. 1984). Acquiescence involves an intentional abandonment of rights and is typically invoked in trademark cases. (*Id.*)

According to Five Guys, these defenses rely on the following facts. Soos helped develop the Corporate Design Standards and oversaw their distribution through Buzzsaw. (Dkt. 95, Aff. Def. ¶ 15; Countercl. ¶ 17) Soos knew what the Corporate Design Standards were, what they were meant for, and how they were used. (*Id.* at Aff. Def. ¶ 16-17; Countercl. ¶ 23) Five Guys further alleges that "[i]f Five Guys really did not have the right to use the Corporate Design Standards for their express purpose, then Soos misled Five Guys into that belief." (Dkt. 103 at 8). Finally, Five Guys alleges that it relied on Soos' misrepresentation by continuing to use, and continuing to pay for, the Corporate Design Standards with Soos knowledge. (Dkt. 95, Aff. Def. ¶ 23-25)

Five Guys' factual allegations are specific enough to support a defense of estoppel and waiver. However, Five Guys has not sufficiently pleaded a defense of acquiescence. That defense appears to be more appropriate in the trademark context, and Five Guys failed to provide any supporting arguments for this defense in its response brief. The Court strikes the affirmative defense of acquiescence.

**<u>Third Affirmative Defense (statute of limitations)</u>**

Five Guys asserts that Soos' complaint is barred by the statute of limitations "[t]o the extent Plaintiff's claims are based on conduct taking place before September 12, 2014." (Dkt. 95, Aff. Def. ¶ 29) Five Guys cites the Copy Right Act's three year statute of limitations period to support this defense. 17 U.S.C. § 507(b). The Court

9

finds that Five Guys has sufficiently pleaded its affirmative defense at this stage of the litigation. Five Guys' affirmative defense is unlike the bald assertions that have been stricken in other cases. *See, e.g.*, *Meaden v. Meaden*, 2012 WL 6019233, at *3 (N.D. Ill. Nov. 30, 2012) (striking affirmative defense that "merely states that plaintiffs' claims are barred by the statute of limitations"); *Dorsey v. Ghosh*, 2015 WL 3524911, at *4 (N.D. Ill. June 3, 2015) (striking statute of limitations defense where the basis for the purported defense "is completely unknown"). The Court declines to strike Five Guys' statute of limitations defense.

**Fourth Affirmative Defense (copyright misuse)**

Five Guys invokes copyright misuse as its final affirmative defense. "Copyright misuse is ordinarily presented as an affirmative defense to an action for copyright infringement where the copyright holder is misusing that right for a competitive advantage beyond the scope of the monopoly created by the copyright itself." *Nielsen Co. (US), LLC v. Truck Ads, LLC*, 2011 WL 221838, at *6 (N.D. Ill. Jan. 24, 2011). "The doctrine of misuse prevents copyright holders from leveraging their limited monopoly to allow them control over areas outside the monopoly." *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) (citations and quotations omitted). Copyright misuse occurs when "a copyright owner [uses] an infringement suit to obtain property protection…that copyright law clearly does not confer, hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively." *Nielsen Co*, 2011 WL 221838, at *6 (quoting *Assessment Technologies*, 350 F.3d at 647); *see also*

*Malibu Media, LLC v. Doe*, 2014 WL 2581168, at *2 (N.D. Ill. June 9, 2014) ("[T]he predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect.").

Five Guys' allegations are sufficient to state a claim for copyright misuse. In particular, Five Guys alleges: 1) that Soos granted Five Guys a non-exclusive right to use the Corporate Design Standards, 2) Five Guys paid Soos for this right, 3) that the right to use the Corporate Design Standards is distinct from any limitations Soos imposed on its Construction Drawings, and 4) that "Soos is using its copyright registration in the three [Construction Drawings] to control something those registrations do not cover." (Dkt. 103, 10-11; Dkt. 95, Aff. Def. ¶¶ 36-41) Viewing all the facts in the light most favorable to Five Guys, Five Guys has adequately pleaded an affirmative defense of copyright misuse.

### **First Counterclaim (declaratory judgment for non-infringement—implied, non-exclusive license)**

Five Guys' first counterclaim seeks declaratory judgment of non-infringement based on Five Guys' implied, non-exclusive license to the Corporate Design Standards materials.

The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, gives the Court discretion to "declare the rights and other legal relations of any interested parties seeking such a declaration." 28 U.S.C. § 2201. "The purposes of declaratory judgments are to 'clarify[ ] and settl[e] the legal relations at issue' and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *See Maui Jim, Inc. v. SmartBuy Guru Enters.*, 2018 WL 509960, at *8 (N.D. Ill. Jan. 23,

11

2018) (quoting *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)). "[F]ederal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Id*. Where a counterclaim merely restates an issue already before the Court, it is "well settled that such repetitious and unnecessary pleadings should be stricken." *Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.* 362 F. Supp. 78, 82 (N.D. Ill. 1973); *see also Sarkis' Cafe*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. July 3, 2014) (dismissing a counterclaim for declaratory judgment where the underlying suit would resolve the infringement question in its entirety). However, in the copyright context, some courts have determined that counterclaims for declaratory judgment for non-infringement can serve an independent purpose by providing the counterclaimant a vehicle for vindicating its rights and potentially recovering attorneys' fees in the event of a voluntary dismissal.[4] *See Malibu Media v. Khan*, 2019 WL 1382082, at *1-2 (N.D. Ill. Mar. 27, 2019) (declining to dismiss a counterclaim for declaratory judgment of non-infringement).

Five Guys argues that "declaratory judgment is necessary to clarify the legal relations between Soos and Five Guys." (Dkt. 103 at 12-13) Five Guys' counterclaim relates to its rights in the Corporate Design Standards, which are separate and distinct from the three Construction Documents Soos seeks to protect in its infringement

---

[4] In *Malibu Media v. Khan*, Malibu sued Khan for copyright infringement, and Khan brought a counterclaim for declaratory judgement of non-infringement. 2019 WL 1382082, at *1-2 (N.D. Ill. Mar. 27, 2019). The Court acknowledged that Khan's counterclaim was redundant in that it repackaged Khan's denial of copyright infringement, but determined that the counterclaim "seeks more than just declaratory relief." *Id*. at 1. The Court was persuaded by Khan's arguments that her declaratory judgment claim allowed her to recoup attorney's fees and to adjudicate the merits even if the Plaintiff voluntarily dismisses the case. *Id*.

suit. (*Id*.) Because Five Guys' counterclaim relates to different material and different rights than those brought in Soos' complaint, Five Guys' counterclaim for declaratory judgment is appropriate. Five Guys' counterclaim of non-infringement is not merely the flip side of Soos' claims. Accordingly, the Court will not strike Five Guys' counterclaim for declaratory judgment of non-infringement based on an implied, non-exclusive license.[5]

**Second Counterclaim (declaratory judgment for non-infringement–copyright misuse)**

Five Guys' second counterclaim seeks declaratory judgement for non-infringement based on copyright misuse. Soos argues that copyright misuse can only be asserted as an affirmative defense, not as an independent claim for relief. (Dkt. 102 at 11-12)

Courts are divided over whether copyright misuse constitutes an independent cause of action. "Courts finding that copyright misuse may not be affirmatively asserted have generally done so on the ground that to plead an affirmative defense as an independent claim seeks an illegitimate litigation advantage." *Nielsen*, 2011 WL 221838, at *7. "Copyright misuse is not a claim but a defense, and Defendants may not transmute it into an independent claim merely by labeling it one for 'declaratory judgment.'" *Id.* (citing *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp 2d 411,

---

[5] In its brief, Soos lumps together the affirmative defense of implied, non-exclusive license and the counterclaim for declaratory judgment based on an implied, non-exclusive license. In discussing both the affirmative defense and counterclaim, Soos argued that its repeated warnings against reuse trump any implied license defense and that Five Guys failed to plead the scope of its license (Dkt.102, 12-13). The Court determined that Five Guys adequately pleaded that affirmative defense. *See* "First Affirmative Defense (implied, non-exclusive license)".

428 (D.N.J. 2005)); *See also Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1226 (C.D. Cal. 2003) ("Copyright misuse has already been asserted…as an affirmative defense, and the Court will reach all aspects of that issue if necessary. Separately litigating that defense in a declaratory posture would not serve the purposes of declaratory relief… [and] there are strong interests in judicial economy in avoiding needless duplication of these already elaborate proceedings.")

However, other courts have recognized copyright misuse as an independent claim or counterclaim. "[T]hey note the analogous doctrine of patent misuse and recognize that defendants may have reasons for seeking a declaration of their rights aside from the infringement claim they are defending." *Nielsen*, 2011 WL 221838, at \*7. *See, e.g.*, *Apple Inc v. PsyStar Corp.,* 2009 WL 303046, at \*2-3 (N.D. Cal. Feb. 6, 2009) ("PsyStar may well have a legitimate interest in establishing misuse independent of Apple's claim against it, for example, to clarify the risks it confronts by marketing the products at issue in this case or others it may wish to develop."); *Midwest Tape, LLC v. Recorded Books, LLC*, 2101 WL 1258101, ay \*1 (N.D. Ohio Mar. 26, 2010) ("[B]ecause the Complaint seeks declaratory judgment, the plaintiff may assert copyright misuse as an affirmative claim."); *Electronic Data Systems Corp. v. Computer Associates Int'l, Inc.*, 802 F. Supp. 1463, 1465-66 (N.D. Tex. 1992) (declining to dismiss independent copyright misuse claim).

Five Guys has asserted copyright misuse both as an affirmative defense and as a counterclaim for declaratory judgment. The Court has declined to strike the affirmative defense of copyright misuse, "and the Court will reach all aspects of that

issue if necessary." *Metro-Goldwyn Mayer Studios,* 269 F. Supp. 2d at 1226. But here, "[s]eparately litigating that defense in a declaratory posture would not serve the purposes of declaratory relief… [and] there are strong interests in judicial economy in avoiding needless duplication of these already elaborate proceedings." *Id.* The Court, exercising its discretion, dismisses Five Guys' counterclaim.

**<u>Third Counterclaim (breach of contract)</u>**

To plead a cause of action for breach of contract, "a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distrib. Co v. Cummings Engine Co.*, 491 F.3d 625, 631 (7th Cir 2007) (internal citations and quotations omitted).

In its counterclaim, Five Guys alleges that Five Guys and Soos entered into a valid and enforceable contract in the form of the Corporate Design Standards Agreement. (Dkt. 95, Countercl. ¶¶ 13-15) According to Five Guys, the original proposal for the Corporate Design Standards project memorializes the parties' agreement. (*Id.*) This proposal is attached as Exhibit 10 to Soos' Amended Complaint. (Dkt. 52, Exh. 10) Soos argues that the proposal was not accepted by Five Guys because Five Guys never signed the document. (Dkt. 102 at 2, 8) Therefore, Soos argues, a contract never formed. (*Id.*) Soos' argument is misplaced. At the motion to dismiss stage, the Court accepts all well-pleaded factual allegations in the counterclaim as true and is merely testing the sufficiency of the complaint. *Cole,* 634 F.3d at 903. Here, Five Guys

adequately pleads the existence of a valid and enforceable contract. Whether the allegations are true is a question for another time.

Five Guys sufficiently pleads the remaining elements of a breach of contract claim. It alleges that it substantially performed under the agreement by paying Soos to both manage Buzzsaw and upload the Corporate Design Standards. (Dkt. 95, Countercl. ¶¶ 12-14, 30) Five Guys also alleges that Soos breached their agreement "by improperly revoking and/or repudiating the license." (*Id.* at ¶¶ 48-50) Finally, Five Guys alleges that the breach caused Five Guys to suffer damages, "in an amount to be determined at trial." (*Id.* at ¶ 51) Five Guys' breach of contract allegation is in no way exhaustive, but it is sufficient to put Soos 'on notice of what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). The Court will not dismiss this counterclaim.

## CONCLUSION

For the reason stated above, Soos' motion to dismiss [101] is granted in part and denied in part. The Court strikes Five Guys' affirmative defense of acquiescence (contained in the Second Affirmative Defense) and dismisses Five Guys' counterclaim for copyright misuse (Count II).

E N T E R:

Dated: December 2, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

16